ELIZABETH J. GRAHAM, as Executrix, etc., Appellant, *v.* LEWIS H. MEYER, Respondent.

A compromise made by a debtor with his creditor may not be assailed on the ground that the debtor omitted to disclose his financial condition. Where he is not questioned in regard thereto, and does nothing to mislead, he is not bound to make any such disclosure.

The fact that a litigated claim has gone into judgment does not make it an undisputed claim.

Where the defendant claims the judgment to be erroneous, and threatens to appeal therefrom, and thereupon the plaintiff agrees to a compromise, it is to be treated as a compromise of a disputed claim, and can only be set aside for fraud.

Before it can be annulled on that ground, plaintiff is bound to restore to defendant whatever he received as a consideration for the compromise, and so far as possible, any right lost in consequence thereof.

(Argued March 26, 1885; decided April 14, 1885.)

On the 20th day of May, 1859, plaintiff's testator, John Graham, recovered in the United States Circuit Court, against the defendant, a judgment for $243,204.42. On the next day the defendant made a general assignment for the benefit of his creditors, preferring all of them to Graham.

The claims of the preferred creditors amounted to $250,000, and the property assigned amounted in value to about $400,000. The defendant at once also took measures looking to a review of the judgment against him in the Supreme Court of the United States. In November of the same year, Graham commenced against the defendant and his assignees a creditor's suit to set aside the assignment as fraudulent, and to reach the assigned property for satisfaction of his judgment. While these conditions existed, Graham and the defendant in the winter and spring of 1860, through their respective agents, entered into negotiations for a compromise and settlement of the judgment, which resulted in the payment, by the defendant, of the sum of $109,850 in full satisfaction and discharge of the judgment.

In the summer of 1866 this action was commenced by Graham, who died after the trial of the action, to set aside the compromise, and satisfaction of the judgment, and to recover the balance due upon the judgment on the ground that the compromise was effected and satisfaction procured by the fraudulent representations of the defendant and his attorney as to the amount and condition of his property. The judge sitting at the Special Term found against the plaintiff upon his allegations of fraud, and he ordered judgment dismissing the complaint. The judgment was affirmed at the General Term.

The court here say: "We have carefully read and considered all of the evidence, and are of opinion that the findings of fact by the trial judge were abundantly justified by the evidence. The opinions given at the Special and General Terms contain all that needs to be said about the facts and the general features of the case." After discussing the facts the opinion concludes thus:

"It appears that after paying the preferred creditors, and the sum agreed upon for the compromise of the judgment, there remained of the assigned estate which came to the defendant, between $30,000 and $40,000. The claim now made on behalf of the plaintiff is, that notwithstanding there was a failure to satisfy the court that any fraudulent representations were made on the part of the defendant to induce the compromise, yet it should be set aside on account of the undue concealment

by him and his attorney of the true condition of the assigned estate. There are several answers to this claim of the plaintiff, which will be separately set forth.

"1. It does not appear that either the defendant or his attorney knew with any certainty how much property would remain to the defendant after paying the preferred creditors and the amount of the compromise. They knew that there would be a large surplus after paying the preferred creditors. But there was no proof or finding that they knew that there would be any considerable surplus after also paying the sum agreed to be paid to Graham, and hence there is no sufficient basis for imputing to them any undue concealment.

"2. There is no allegation in the complaint, and no finding, and no just inference from the evidence that Graham was in any way influenced by the concealment, if any. Upon the whole evidence there is no reason to doubt that he would have made the same compromise if he had had all the information about the estate of the defendant, which either he or his attorney could at the time have given. The estate was in the hands of the assignees. The defendant regarded the judgment against him as unjust, and it was certainly a very hard one for him to pay. He claimed it was affected with error, and he was taking proceedings to procure its reversal. Graham appears to have been insolvent and in great need of money to compromise with his creditors. Under such circumstances, if Graham had known the precise condition and value of the assigned estate, it could not be said that the compromise was an unreasonable or an unwise one for him to accede to.

"3. But the defendant was not bound to make any disclosure of his financial condition. He was not asked to make any. He made no misrepresentations, and did nothing to mislead Graham, or prevent him from inquiring, or to throw him off from his guard. They negotiated at arms' length. The defendant was in no trust or confidential relation with him. It is true that he had made an assignment, and had thereby created a trust for Graham's benefit. But he was not the trustee. He bore the simple relation to him of debtor, and he had the right to make the best compromise with him he could, using no fraud or culpable artifice to accomplish the result. Each

party to such a compromise has the right to the advantage which his superior skill, foresight and knowledge may give him. The business of the world can be conducted upon no other basis. If either party desires information from the other he must ask for it, and then he must not be misled or deceived by answers given. These views are fully sustained by the case of *Dambmann* v. *Schulting* (75 N. Y. 62), and the court below was not mistaken in holding that that case was a controlling authority for the decision it made. The principles of law laid down in that case were in no way impugned or questioned, when the case again came before this court in 85 N. Y. 622, but they were reaffirmed. (See, also, *Murray* v. *Blatchford*, 1 Wend. 583, and *Shank* v. *Shoemaker*, 18 N. Y. 489.)

"Here the assignment was not fraudulent, and it does not appear to have been made for the purpose of coercing a compromise from Graham. If the assignment may be taken as a declaration that the assignor was unable to pay all his debts, it was a true declaration, if the judgment be included among the debts. From the fact that the defendant made an assignment and thus announced his insolvency, Graham had no reason to suppose that his liabilities, as compared with his assets, were any greater than they actually were. At the time of the compromise Graham was in a more favorable position than creditors generally can have who seek to compromise with their debtors. He had a judgment and his debtor's property was all placed in trust for him and other creditors. His debtor could no longer interfere with, or conceal it, and he had commenced a creditor's suit by which he obtained an equitable lien upon the equitable assets. All he had to do was to prosecute his equitable suit to judgment, and he would thus obtain all the property of his debtor after the payment of the preferred debts, and it was in his power to ascertain from the assignee the condition and value of the assigned estate. Hence there can be no claim that he was forced to compromise by the stress of any great disadvantage under which he had been placed by any act of his debtor.

"4. But there is still a further ground which is absolutely fatal to any recovery in this action upon any facts proved in this case. This judgment was not an undisputed claim. It

was so far undisputed that it could be assailed only by writ of error to the Federal Supreme Court, and such an assault upon it, the defendant was seeking to make. Whether or not it would be successful could not at the time of the compromise be known. The defendant claimed that the judgment was unjust and erroneous, and he disputed his liability to pay it; and hence his compromise must be treated as a compromise of a disputed claim, and so the trial judge found. Therefore, before the plaintiff can have the compromise annulled on the ground of fraud he was bound to restore to the defendant the money paid to him with the interest, and also to restore to him so far as he could his right to prosecute his writ of error to the Supreme Court from the judgment, in case, for any reason, by the lapse of time, he had lost it; and for this position the case of *Gould* v. *Cayuga County Nat. Bank* (86 N. Y. 75) is a precise authority. Here there has never been, either before the commencement of this suit, or in the complaint, or at any stage of the litigation, an offer of restoration by the plaintiff, and there was not even any proof of his financial ability or of his willingness to make the restoration. Therefore, even if the fraud had been proved as alleged in the complaint, there could have been no recovery. While the judgment below does not seem to have been placed upon this ground, yet as the defense appears upon the record to exist, it is available to the defendant for the purpose of sustaining his judgment. This court should not grant a new trial when, upon the pleadings and all the facts of a case as found by the trial court, it appears that there is an absolutely good defense to the action.

"We are, therefore, of opinion that the judgment should be affirmed, with costs."

*Stephen P. Nash* and *William J. Gilson* for appellant.

*Bernard Roelker* and *Joseph H. Choate* for respondent.

EARL, J., reads for affirmance.
All concur.
Judgment affirmed.