# UBÁRRI v. LABORDE.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.

No. 137.   Argued April 7, 8, 1909.—Decided May 17, 1909.

Judgment reversed on the facts, it being based on allegations of fraud and corruption which this court holds were not sustained by the evidence.

The effect under the law of Porto Rico of an heir waiving the benefit of inventory is to make him personally liable for the debts of the succession without limit, as under the early law of Rome, of England and of France; but, after the inheritance is divided, the liability of the succession is at an end and gives place to personal liability of each heir for the whole debt to the extent of the assets received by him, if accepted with benefit of inventory, or otherwise in full.

Whether or not an heir in Porto Rico waives benefit of inventory is a pure question of fact; and, if the complaint is silent, the court will not presume that there was such a waiver.

3 Porto Rico, 163, reversed.

THE facts are stated in the opinion.

Mr. Walter D. Davidge and Mr. Clifford S. Walton for plaintiff in error.

Mr. Willis Sweet and Mr. George H. Lamar for defendants in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action by children of one Jacinto López against one of the heirs of one Pablo Ubarri, alleging fraud on the part the said Pablo in dealing with the estate of López. It is alleged that as the result Pablo Ubarri became the owner of more than 4,000 acres of land that had belonged to López, and

otherwise damaged and defrauded the estate to the extent of over $150,000. There was a trial and a verdict and judgment for the plaintiffs, the defendants in error. Many errors were alleged by exception and otherwise, and the case was brought by writ of error to this court.

The facts relied upon as establishing fraud are as follows: Pablo Ubarri received from the widow of Lopez a power of attorney to administer the estate, and appointed as his substitute one Tomas Caballero. The probate proceedings went on amicably, the heirs were declared and the estate was appraised and apportioned to them, the widow receiving property that by valuation was sufficient to pay the scheduled debts in addition to her personal share. Among these debts was one to Pablo Ubarri of $24,000. When the probate proceedings were ended this debt was disputed by the widow, who asked for documentary evidence; Ubarri thereupon showed some irritation and wrote to her in a manner that might be taken to imply a threat. She persisting, he began a suit with an attachment, the above-named Caballero being his procurador. Before and afterward some of the property was attached for taxes and ultimately it was sold. Ubarri became the purchaser, no other bidders appearing at the sale. Then his action went to judgment, and, finally, the land belonging to the estate, or a large part of it, was adjudicated to him upon execution. Ubarri was the richest, and, politically, the most powerful man in Porto Rico. Circumstances are stated suggesting the inference that even the judges might have been afraid of him. It is said that the representative of the minor heirs, the appraisers of the estate, and pretty much every one concerned in the probate proceedings were in such relations to him as to be likely to be his tools, that the appraisal was much too low, that the sale for taxes brought a wholly inadequate price, that the attachment tied up the estate so that no money could be got to pay any debt, and that he was an official superior of the municipal authorities ordering the collection of the taxes, and practically the head of those

affairs. The inference sought to be drawn from his powers and the result is that he pressed the collection of the taxes after he had made it impossible for the estate to pay them; that no one would dare to oppose when it was made known that he wished to buy, and that by his pressure at both ends he was able ultimately to appropriate and exhaust an estate, appraised by his own appointees at $123,000, for a claim of $24,000 and a comparatively small debt for taxes. It seems to have been argued at the trial that he helped out this result by causing the property attached to be appraised at too low a value, and thus enabling himself to bid it in, as he did, at two-thirds of that valuation, under Arts. 1497, 1502, of the Code of Civil Procedure then in force.

As a further circumstance it was alleged and proved that the widow was proceeded against criminally for cutting a few trees from the estate after Ubarri's attachment, and was acquitted in the court of first instance, but that Ubarri, as private prosecutor, took the case to a higher court, being represented there by the above-named Caballero, and got a sentence of fine or imprisonment imposed upon her. We do not perceive the relevancy of the fact, except possibly as showing the animus with which Ubarri pressed his rights.

On the other side we start with the fact that the debt to Ubarri is admitted, and that in the argument it was stated that no objections have been made to the probate proceedings. Certainly no ground appears for suggesting that anything in those proceedings contributed in any way to the alleged fraud. But if this be so, any special duty or burden of proof arising out of confidential relations disappears. We have simply the case of a creditor enforcing his debts after the division of the estate. He had to bid at the tax sale in order to save his attachment. There is no evidence except the fact of his power to show that other bids were deterred, and none to show that he tried to deter them. On the contrary, it appears that some of the personal property, at least, was bought by another. So as to the sale on execution. Both transac-

tions were regular in form. It seems from the correspondence, that so far from his having stirred up the collection of the taxes, they were in arrears for some time, and that the officials had been pressing for them before it reasonably could be imagined that he had any hand in what was done. The widow had shown a readiness to suspect him, without grounds so far as appears, two years before his suit was begun, and he had expressed his willingness to have her withdraw the power of attorney whenever she pleased. When the suit was brought they were at arms' length. It was argued that he procured the property attached to be appraised at too low a value, as we have said. But there is no evidence that he did; no sign of any protest on the part of the appraiser that the debtor was authorized to appoint; nothing to show that the judge did not do his duty in appointing a third competent and disinterested man. Arts. 1481, 1482, 1492. The appraisal seems to have agreed with that in the probate proceedings. It is said that that was fraudulent. But it appears that all the parties, after discussion, agreed to the appraisers appointed and to the appraisal, and it does not appear that they were misled in any way. Neither does it appear that the appraisal before execution was not the result of independent judgment, whether it agreed with the former appraisal or not. The whole property was sold by the heirs of Ubarri between 1898 and 1902 for little more than the amount of the judgment. In short, on questionable evidence as to the value of the estate and the fact that Ubarri was a man of great power and influence and bought the land, when sold for taxes and on execution, at much less than the value set by the plaintiffs, the case was sent to the jury with liberty for them to find upon suspicion that judges, mayors, appraisers and possible purchasers all were frightened or corrupt. We are of opinion that this was wrong, and that the exceptions taken by the plaintiffs in error should be sustained.

It is not likely that we shall hear of this case again, and therefore we leave many points untouched that would have

to be considered seriously before the judgment could be sustained, but we shall advert to one other matter. The court instructed the jury that because the defendant had not shown the contrary, it was to be presumed that the heirs of Pablo Ubarri took without benefit of inventory, and that therefore service upon one of them authorized the court to give judgment against the succession for whatever the verdict might be. In the light of this instruction and the prayer of the complaint, which was for judgment against the succession, it would seem that the judgment should be construed to follow the prayer. It reads that the plaintiffs "recover of and from the defendant Buenaventura Ubarri Yramategui of the succession of Pablo Ubarri," &c. This is ambiguous, but we assume it to be against the succession. But if so, we do not perceive the bearing of the presumed waiver of the benefit of inventory. The effect of such a waiver was to make the heir personally liable without limit, as he was in the early law of Rome, of England, and of France. Civil Code of 1889, Art. 1084; Glanville, Lib. 7, c. 8; Viollet, Hist. du droit civil Français, 2d ed., 829, 830. But as this was a suit against the succession that was immaterial, so far as the form or scope of the judgment was concerned. It was material, however, with reference to the nature of the suit. For unless we entirely misunderstand the meaning of the Code of 1889 and of the proceedings under the civil law in case of succession, after the inheritance has been divided the liability of the succession is at an end, and gives place to a personal liability of each heir for the whole debt to the extent of the assets received by him if he has accepted with benefit of inventory, or, otherwise, in full. Arts. 1003, 1023, 1084. It is for this reason, we presume, that creditors "recognized as such" were given the right to oppose the division until they were paid or secured. Art. 1082. If this suit is to be regarded as we have supposed and as the defendants in error say, it seems to be misconceived. If on the other hand it should be regarded as a suit against Buenaventura Ubarri personally, in respect of a liability of his ancestor, the complaint

does not allege that he inherited any property, or how much, or that the inheritance had been divided, or whether it was accepted with or without benefit of inventory. If we assume a division to have taken place, we see no ground for presuming that the defendant accepted his share without benefit of inventory or is liable for anything beyond the unascertained value of what he received. Whether he waived the benefit of inventory or not, is a pure question of fact. It was not material to a suit against the succession and therefore was not mentioned in the pleadings. Even the division of Pablo's inheritance was mentioned only incidentally in the evidence, and it does not appear whether it took place under the Code of 1889 or that of 1902. But if the supposed waiver were to be considered we know of no reason for presuming what probably is the exception not the rule to have happened in this case. For the foregoing reasons also the judgment was wrong.

*Judgment reversed.*