## BUENAVENTURA UBARRI É IRAMATEGUI

*v.*

## JOAQUIN MATIENZO AND ANTONIO ALVAREZ NAVA.

---

San Juan, Equity, No. 568.

1. A bill in equity that seeks to recover from a respondent property which the latter bought at an execution sale against the complainant, on the ground that the purchaser had been the agent and manager of the property for complainant, and therefore had no right under the general rule, and under § 1362 of the Civil Code of 1902 of Porto Rico, to purchase his principal's property at such a sale, that does not tender the amount of money paid therefor by the agent, is bad on demurrer.

Ubarri é Iramategui v. Matienzo.

2. The rule that one standing in a fiduciary relation to another, in the management of property, cannot become the purchaser of such property himself at a forced sale thereof, does not always apply where the agent or trustee was not responsible for, and took no part in bringing about, the sale at which he became the purchaser. But even if a bill to recover the property could be maintained, it would be inequitable to permit the recovery without obliging complainant to return the purchase price to such agent or trustee.

3. A judgment and an execution under it that are regular in form are a full protection to all innocent third parties, and even in case of the reversal of the judgment on writ of error, the defendant cannot afterwards maintain a bill in equity to recover the property sold without at least offering to return to the purchaser the money he paid therefor. In the absence of such offer a demurrer to the bill will be sustained.

Opinion filed May 12th, 1910.

Messrs. *J. R. F. Savage* and *Luis Llabres,* solicitors for complainant.

Mr. *C. M. Boerman,* solicitor for respondents.

RODEY, Judge, filed the following opinion:

This is a bill in equity praying the court to set aside an execution sale of a business building in the city of San Juan, Porto Rico, and that the sale be held to be null and void, and the property be decreed to belong to complainant, and that the deed therefor to the first-named respondent, who was the real purchaser thereof, be canceled, and that costs be awarded, etc. It was filed originally June 16th, 1908, and after a demurrer was

filed against it, was amended under date of August 21, 1909,
to which the demurrer was again interposed on September 17th
of that year. The issue raised by this demurrer is the question
before us. It was argued orally at length, and afterwards coun-
sel for both parties filed carefully prepared briefs.

One of the respondents, Antonio Alvarez Nava, disclaimed,
and on the argument of the demurrer it was admitted, that he
was a mere conduit through which the title immediately passed
to the other respondent, Joaquin Matienzo.

The suit arises because of the unfortunate failure of the de-
fendant in suit No. 386, lately pending on the law docket of
this court, entitled Laborde v. Ubarri, 4 Porto Rico Fed. Rep.
16, to file a supersedeas bond against the execution, although
having duly sued out a writ of error. It transpired that after-
wards, May 17, 1909, the Supreme Court of the United States
(Ubarri y Yramategui v. Laborde, 214 U. S. 168, 53 L. ed.
953, 29 Sup. Ct. Rep. 549) reversed the case, and, of course,
the plaintiff in error at once became entitled to restitution.
However, in this suit he claims that the sale of his property
under the execution was absolutely void, and that he is entitled
to have his property returned to him, particularly because the
real purchaser, the respondent Joaquin Matienzo, was his agent
and manager for the property in question, under a power of
attorney at the time of the sale. His counsel sets forth, in the
elaborate brief which they have filed, that, under § 1362 of the
local Civil Code of Porto Rico of 1902, no person occupying
any such fiduciary relation to another can become the purchaser
of his principal's property at any sort of a sale thereof. The
section in question is as follows:

Section 1362. The following persons cannot acquire by pur-

Ubarri é Iramategui v. Matienzo.

chase, even at public or judicial auction, neither in person nor by an agent:

1. The guardian, etc., etc.,

2. Agents, the property, the administration or sale of which may have been intrusted to them.

It may be admitted as we set forth in our opinion in the New Colonial R. Co. v. Canovanas Sugar Factory, 2 Porto Rico Fed. Rep. 230 et seq., and also in our opinion in the Central Altagracia v. Wilson, ante, 36, that the general rule is well settled that an agent holding a fiduciary relation to his principal cannot do, as to the property of such principal, many things which an outsider could do  This same idea is set forth fully in United States v. Carter, 216 U. S. 515, 54 L. ed. —, 30 Sup. Ct. Rep. 515, decided on April 18th, 1910, by the Supreme Court of the United States, in an opinion by Mr. Justice Lurton, the advance sheets of which have just come to hand.

Complainant in this present bill does not tender into court the purchase money which it is not denied respondent paid for the property at the sale in question.  The demurrer and the brief filed to support it proceed largely on the ground that this offer of payment should be made before complainant is entitled to ask for any relief whatever.

We are extremely pressed for time, and cannot write an opinion on this question, which the facts surrounding the transaction warrant, but that need be no indication that we have failed to give the briefs of counsel careful consideration, because we have.

We are convinced that respondents' contention is right, and that there is nothing in or around the situation of the parties here that would entitle complainant to maintain this bill, un-

Ubarri é Iramategui v. Matienzo.

less he first offers to do equity by tendering or offering to pay respondent, or to the court for his benefit, the amount of money which it is admitted the latter paid for the property at the time he took the deed under the sale.

The rule that an agent, or a person acting in a fiduciary capacity for a principal, cannot become the purchaser at a sale of the principal's property which was in the agent's charge, is the result of sound reasoning, because to hold otherwise would be to invite and permit all sorts of conspiracies and frauds; but, on the other hand, we do not think there is anything in the rule itself, or in the statute of Porto Rico above quoted, that is intended to take away any of the ordinary personal contractual rights of such an agent. If the agent himself takes no part in bringing about the sale, why should he be prevented from buying the property the same as any other citizen? In fact, such is the rule in Texas, and the principle is upheld by the Supreme Court of the United States in Allen v. Gillette, 127 U. S. 589, 32 L. ed. 271, 8 Sup. Ct. Rep. 1331. But even if the rule were absolute against the right of such agent to purchase at a sale which he took no part in bringing about, would it be equitable to permit his principal, against whom the execution, that was regular on its face, ran, to take the property away from him without returning the money he paid therefor? It would be unconscionable to permit such a thing.

However, the point is made by counsel for this complainant, and is very forcibly urged, that the main cause of action which was so reversed by the Supreme Court of the United States was, under the allegations and prayer of the complainant, essentially a suit against the succession of complainant's father, Pablo Ubarri, and that therefore the judgment on which the execu-

tion issued in that case should have been worded distinctly against the succession as such, and could not be levied against the individual property of this complainant, as it is contended was done. To this, counsel for this respondent replies that, while the suit probably originally was directed against the succession, still all of the heirs save complainant, long previous to the trial, secured the dismissal of the case as to them, and that the suit thereafter proceeded against this complainant, who was the only remaining defendant in that suit at law, and that, even if it was error to permit the suit to proceed against one heir alone, without proof as to the actual property such heir received from the estate, such fact would not permit the judgment against the remaining defendant to be attacked collaterally. That, therefore, when the judgment as entered ran against this complainant, Ubarri y Yramategui v. Laborde, 214 U. S. 172, 53 L. ed. 955, 29 Sup. Ct. Rep. 549, it was prima facie at least an enforceable judgment against complainant, and an execution issued thereunder, following its terms, was properly levied against even the individual property of this complainant, and protected all purchasers at the sale. That complainant here should have availed himself of his remedy at the proper time, and not having done so, he is estopped in that regard. That his remedy was to have objected to the entry of the judgment as not following the allegations or prayer of the complaint or the verdict in the cause, and that, because of his failure to do this, and permitting an execution prima facie regular on its face to issue, he should not be heard now against its regularity. That this respondent had a right to purchase the property sold under an execution against complainant, which was wholly regular on its face, and that even a mere notice to this respond-

### Ubarri é Iramategui v. Matienzo.

ent at the time of the execution sale, which respondent denies was ever given, is insufficient to entitle this complainant, at this late day, to recover the property from any purchaser without at least tendering to him the money he paid therefor, and much less from a purchaser in good faith.  That to permit such a thing to take place would be to permit this complainant to take advantage of his own negligence in failing to give a supersedeas bond, and in failing to move against the unfortunate or inadvertent wording of the judgment as entered.  That to permit such a thing to be done would simply entail serious loss upon this respondent, who was an innocent purchaser for value, etc.

That complainant had all of these things pointed out to him at the time he moved for a new trial in the main case (see the opinion of the court, 3 Porto Rico Fed. Rep. 164), and was well aware of the form of the judgment and of the fact that his failure to file a supersedeas bond might entail heavy loss in case of the reversal of the cause,—all of which knowledge he failed to take advantage of, but permitted the sale to take place, and knowingly permitted this respondent to pay a large amount of money for the property at the time of the sale, and now seeks to recover the property without tendering back the purchase money.

On the whole, therefore, we are satisfied that equity and good conscience require us to sustain this contention of the respondent here, and that complainant should be obliged to tender respondent the money he paid for the property before this bill can be maintained, and therefore the demurrer will be sustained, and the bill will stand dismissed, unless within three days from this date it is amended so as to comply with the views herein expressed, and an order to that effect will be entered.

We might state here that proceedings are taking place in this court, at the present time, looking to the securing of restitution under the mandate of the Supreme Court of the United States in the main case, and counsel for complainant here have stated that they intend to tender an assignment of the writ and any money that may be recovered thereunder to this respondent, but we do not think such a proceeding is proper, or that it would change the situation of the parties.