## BLAKESLEE v. WALLACE.
### No. 5505.

Circuit Court of Appeals, Sixth Circuit.
Dec. 2, 1930.

Weymouth Kirkland, of Chicago, Ill., and S. E. Knappen, of Grand Rapids, Mich. (Knappen, Uhl & Bryant, of Grand Rapids, Mich., Mason & Sharpe, of Kalamazoo, Mich., Kirkland, Fleming, Green & Martin, of Chicago, Ill., Don B. Sharpe, of Kalamazoo, Mich., and Charles F. Rathbun, of Chicago, Ill., on the brief), for appellant.

F. D. Eaman, of Detroit, Mich. (Stevenson, Butzel, Eaman & Long and Lewis W. McCandless, all of Detroit, Mich., on the brief), for appellee.

Before HICKS and HICKENLOOPER, Circuit Judges, and WEST, District Judge.

HICKENLOOPER, Circuit Judge.

The plaintiff below, here appellee, brought her action at law and recovered a judgment against appellant for deceit, alleged to have been practiced upon her to induce the sale of certain common stock of the Kalamazoo Stove Company. The defendant was the vice president and general manager, a director, and one of the largest stockholders of the company, having accumulated his stock holdings through purchases from year to year at prices ranging from the par value of $10 per share in 1920 to the maximum of $35 per share in August, 1927. The plaintiff was the daughter of W. S. Dewing, president of the company, and had held 1,500 shares of the stock since the year 1921, when she received the same as a gift from her father.

In September, 1927, the investment banking firm of Keane, Higbie & Co. expressed a desire to purchase a substantial interest in the company. The stock then had a book value of slightly in excess of $40 per share, without placing any valuation whatever upon good will. Offers of $40 and $42.50 per share failed to interest any one, but in December, 1927, an offer was made to pay $46 per share for not less than 40 per cent., nor more than 60 per cent., of the total issue. This offer Blakeslee agreed to submit to the stockholders, and on December 10, 1927, went, with C. A. Dewing, treasurer of the company, to the home of W. S. Dewing for the purpose of discussing with him, his wife, and his daughter, the advisability of accepting the proposal. It was during this interview that the defendant is alleged to have made the false representations upon which the recovery was based.

The representations set forth in the declaration may be grouped into three general classes: (a) Those which are in the nature of representations of comparative fact, tinged, possibly, with opinion, viz.: (1) That the sales of furnaces for the preceding month had fallen to almost nothing and (2) that the affairs of the company were uncertain and hazardous; (b) representations of pure opinion, viz.: (3) that common stock is a poor investment for women; and (4) that the price offered was a "large" price; and (c) representations of future intention, viz.: (5) that the defendant intended to sell half of his own stock, retaining the balance only because he intended to continue his affiliation with the company; and (6) that if the plaintiff did not sell (established by the proofs, if at all, to be that if the deal did not go through), defendant would resign and accept an offer of employment elsewhere. The declaration also contains a general allegation of failure "to make full, true and direct answers and disclosures in response to inquiries concerning the business and affairs of the corporation," and with concealing "material

information," but it is not specified what information was concealed or in what respect the defendant failed to make full disclosure. Fraudulent concealment was thus improperly pleaded, but we shall consider first the extent to which the general allegation might here be relevant and the charge of the court thereon.

The plaintiff disclaims the existence of any fiduciary relationship creating a duty to make disclosure. The defendant had an avowed personal interest; so much so that he is said to have threatened to leave the company unless the purchase by the bankers could be consummated. Disclosure was made by him of obvious advantages to 'himself from a change of stock control, such as, a market for the stock, by listing it on an exchange, an increase in salary, complete control of operations, and strong financial connections for the company. Under such circumstances, we are of the opinion that the plaintiff was entitled to protection only as against actual misrepresentation, either by false affirmative statement or by falsely colored half-truths. The position of the defendant as a stranger to plaintiff, when negotiating for a purchase of the stock of the company in which he was an executive and she a stockholder (cf. Walsh v. Goulden, 130 Mich. 531, 90 N. W. 406), was emphasized and strengthened by the particular circumstances disclosed and known. In Cleaveland v. Richardson, 132 U. S. 318, 329, 10 S. Ct. 100, 103, 33 L. Ed. 384, the court summarizes and approves the opinion in Dambmann v. Schulting, 75 N. Y. 55, as follows: "Where there is no such relation of trust or confidence between the parties as imposes upon one an obligation to give full information to the other, the latter cannot proceed blindly, omitting all inquiry and examination, and then complain that the other did not volunteer to give the information he had."

It is the present complaint of the plaintiff that she was unadvised that the company had a surplus of more than a million and a half dollars, accounts receivable of in excess of a million dollars, cash and Liberty bonds of approximately half a million dollars, and earnings in excess of $500,000 (100 per cent. of the capital stock) per year. She contends that had she known these facts she would not have consented to sell her stock at approximately its book value. She did know, however, that the company had been paying dividends of 24 per cent. for the past two years, and that dividends had been increased continuously and substantially during the entire period she held her stock, indicating an increasingly profitable, growing business, and she was told that there was no reason why the dividend policy should not continue. Had she desired details of earnings, surplus, or quick assets, these could have been secured by her. The alleged statement of the defendant that the affairs of the company were uncertain and hazardous was sufficient to put her on inquiry, should she have desired to be advised of the company's exact financial condition. The means of knowledge were at hand. She could have gone to the offices and secured accurate information; yet she made no inquiry. Whether her neglect in this particular be attributed to indifference or credulity she should not now be heard to say that she has been deceived by fraudulent concealment. Cf. Slaughter's Adm'r v. Gerson, 13 Wall. 379, 383, 20 L. Ed. 627; Andrus v. St. Louis Smelting Co., 130 U. S. 643, 647, 9 S. Ct. 645, 32 L. Ed. 1054.

A different situation is obviously presented where an action in equity is begun by one party to a contract, seeking to annul or set it aside because of unjust enrichment and overreaching through the suppression of facts which the defendant, acting in good faith and fair dealing, was under obligation to disclose. Strong v. Repide, 213 U. S. 419, 29 S. Ct. 521, 53 L. Ed. 853; Griswold v. Hazard, 141 U. S. 260, 11 S. Ct. 972, 999, 35 L. Ed. 678. There one of the conditions precedent to relief is that the parties may be placed in statu quo. The defendant is not mulcted in damages beyond the sum to which he has been so unjustly enriched. The same underlying principle of justice exists where the action is brought at law as between the parties to a contract and the relief sought is to recover that which the plaintiff has lost and the defendant has gained by reason of willful suppression of material facts, in all respects analogous to the relief procurable in equity. Stewart v. Wyoming Ranche Co., 128 U. S. 383, 9 S. Ct. 101, 32 L. Ed. 439; Buckley v. Buckley, 230 Mich. 504, 202 N. W. 955. Cf. Bollstrom v. Duplex Power Car Co., 208 Mich. 15, 175 N. W. 492. So also the facts not disclosed may have pertinent bearing upon a determination of the truth or falsity of the statements made. But we know of no rule which permits the mere nondisclosure of facts available to the plaintiff, but as to which no inquiry is made nor information sought, to form a basis for recovery at law against one in an interested if not an adversary position, with whom no contract

was made, who has benefited by the action of the plaintiff only indirectly and collaterally, and who has not been the recipient of that which plaintiff claims to have lost. In such circumstances, "if either party desires information from the other he must ask for it, and then he must not be misled or deceived by answers given.". Graham v. Meyer, 99 N. Y. 611, 1 N. E. 143, 145.

Notwithstanding this situation, the court below charged the jury at length upon the question of concealment, saying that if the defendant "was told" that the plaintiff relied upon him for information and advice, "you have the right to find that defendant was then bound to make full and accurate disclosure of (all) the material facts within his knowledge relative to the value of plaintiff's stock," and "to withhold nothing from the stockholder affecting the value of his (her) shares." Proper exceptions were taken. This, we think, was an overstatement of the rule as applied to the facts of the instant case. Doubtless the stockholder is entitled to a full and accurate answer to any specific inquiry, to a statement of the company's financial condition, if desired and requested, and to protection against actual misrepresentation, even in a matter where the parties are dealing at arm's length, and whether the misrepresentation be made in reply to inquiry or not. But it is contrary to established principles of law that a duty of practically unlimited, general disclosure may be created by the bare statement of the plaintiff that she relies upon the defendant for advice, or that a charge of fraud may be predicated at law upon a failure by the defendant, under such circumstances, to disclose some fact or facts known to him, but not the subject of direct inquiry, and not even specifically pleaded. The plaintiff had no legal right to place such a burdensome obligation upon the defendant. She was bound to act upon her own judgment and to definitely seek that information, if of a current and general nature, which she deemed necessary for her guidance. She was here entitled only to protection against actual misrepresentation or its equivalent.

We come then to a consideration of the charges of misrepresentation. Counsel for the defendant raise the objection that all of the alleged misrepresentations are tinged by, or relate to, matters of opinion, belief, expectation, or future intention, and, as such, cannot be made the basis of recovery. The general rule is that, to support an action in deceit, the alleged misrepresentation must be in regard to a material fact, and must be made with knowledge of its falsity and with intent that it shall be acted upon by the plaintiff. The representation must not only be false and made with intent to deceive, but it must be acted upon by the other party in ignorance of its falsity and with reasonable belief that it is true. These essential facts must all be proved by clear and convincing evidence. Jones v. Simpson, 116 U. S. 609, 615, 6 S. Ct. 538, 29 L. Ed. 742; Farrar v. Churchill, 135 U. S. 609, 615, 10 S. Ct. 771, 34 L. Ed. 246; Lalone v. U. S., 164 U. S. 255, 257, 17 S. Ct. 74, 41 L. Ed. 425; Ubarri v. Laborde, 214 U. S. 168, 29 S. Ct. 549, 53 L. Ed. 953; In re Hawks, 204 F. 309, 316 (D. C. Ark.). But, broadly stated, a "state of mind is itself a fact, and may be a material fact, and false and fraudulent representations may be made about it." Seven Cases v. U. S., 239 U. S. 510, 517, 36 S. Ct. 190, 193, 60 L. Ed. 411, L. R. A. 1916D, 164. Promissory representations stand in much the same light. James-Dickinson Farm Mortgage Co. v. Harry, 273 U. S. 119, 124, 47 S. Ct. 308, 71 L. Ed. 569; Wright v. Barnard, 248 F. 756, 775 (D. C. Del.); Scott v. Empire Land Co., 5 F.(2d) 873, 878 (D. C. Fla.); Vulcan Metals Co. v. Simmons Mfg. Co. (C. C. A.) 248 F. 853, 856; Taylor v. Burr Printing Co., 26 F.(2d) 331, 334 (C. C. A. 2).

Keeping in mind, always, that the essential and determinative intent must be not merely to influence the action of the plaintiff, but to actually deceive and mislead plaintiff in some definite particular, we think that the only representations upon which an action may be founded, whether they be representations of substantive fact or of opinion, hopes, intentions and beliefs, are those which, under the admitted relationship of the parties, the plaintiff has a right to accept as serious fact statement, as distinguished from "puffing," argumentative reasons, or sales talk. Known bias or interest plays a part. Whether the subject-matter of the representation is general or specific is also important. Equality of knowledge is usually presumed as to generalities. In order to support an action the representation must be one which the declarant intended to be understood, and the plaintiff had a right to understand, as importing a distinct obligation of accuracy or fulfillment. This is the criterion fixed by Sawyer v. Prickett, 19 Wall. 146, 163, 22 L. Ed. 105. Beyond that any belief by the plaintiff in the truth of the representation is unreasonable. Deceit is something more than mere credulity or misplaced confidence.

■ Viewed in this light, we think that most of the alleged misrepresentations should have been excluded from the consideration of the jury as being, in and of themselves, each a sufficient ground for recovery. This applies with peculiar force to all of the above-stated allegations of misrepresentation except the first and second. That "common stock was a poor investment for women" is a generality which obviously omits from consideration all question of the business ability of the individual woman, the nature of the particular corporation and the security of its stock, and the purpose for which the investment is held. The court refused the instruction that "the mere expression of opinion or judgment upon a matter upon which opinions may fairly differ cannot, even if found erroneous, be the basis for an action in fraud such as is here brought." Exception was taken, and the questions now considered are otherwise duly saved. The court instructed the jury that it was not essential, in order that the plaintiff might recover, that she establish each and all of her several claims of fraudulent representations, but that it was enough if any one of such allegations was sustained, that the allegation was material, that it was relied upon, and that it was made with fraudulent intent and resulted in damage to the plaintiff. Evidence was introduced that, subsequent to the reorganization of the company, the defendant placed 2,000 shares of his stock in his wife's name. This evidence may have been taken by the jury as a demonstration of the falsity of the representation now considered, and the verdict may have been based solely thereon. Even conceding that the plaintiff may have been deceived into believing that all common stocks were improper investments for all women, we think that such a general statement of opinion, certainly under the circumstances of this case, could not form the basis for an action in deceit. Blind acceptance of its truth was wholly unreasonable in view of the known interest of the defendant in promoting the sale and the avowed adverse position he occupied.

■ That "the price offered was a large price" is much of the same nature. The price offered was $11 per share (110 per cent. of its par value) higher than that for which the defendant had purchased 928 shares less than four months previously; the highest price ever theretofore paid for the stock. The representation was purely a statement of comparative opinion and easily confused with an opinion of a "fair" price, or the largest price which could probably be obtained in the sale of a controlling interest.

The record lacks any substantial evidence that, at the time the representation was made, the defendant did not intend to sell half of his own stock in order that the sale might be completed. He was one of the largest stockholders and unless many of them consented the project must fail. It was vitally to his interest that it should succeed. The plaintiff did not follow his lead, or she would have sold but half of her own stock; but, be that as it may, the falsity of this statement is wholly unestablished by the evidence. On the contrary, it is satisfactorily shown that the defendant's decision to retain all of his stock holdings was made only when it was apparent that a sale of his stock was unnecessary to complete the transaction, and, even then, only after persuasion and advice by others that it was better from a business point of view for him to retain his entire stock holdings.

■ That the "defendant would resign and accept an offer of employment elsewhere if the deal did not go through" is to be classified as essentially "bluff," sales argument, and that exaggeration of persuasion which the plaintiff had no reasonable justification to take seriously. The defendant obviously did not intend to be bound by his statement to tender his resignation if the negotiations for the sale failed, and it is at least extremely doubtful that the plaintiff could have so understood him. All of the above-discussed representations were of a nature which, under the circumstances, implied no obligation upon the part of defendant for their strict accuracy and fulfillment, and which the plaintiff had no right to accept as statements of fact by which to govern her own actions. All must be charged with common intelligence, and common intelligence forbids acceptance of such statements as criteria in making a business decision.

■ The representation that sales of furnaces had fallen to almost nothing for the preceding month, if taken literally, and that the affairs of the company were uncertain and hazardous, if construed as meaning that the company was in doubtful financial condition, stand upon a different basis. So interpreted, these are statements of fact upon which a stockholder would be reasonably justified in accepting the word of a trusted executive in charge of operations. In view of the information already in the possession of the plaintiff, the progressively increasing distributions of earnings during past years, the detailed information which was available in case of doubt, and the fact that a stranger

was seeking to purchase an interest in the company and was offering to pay for its common stock at 460 per cent. of the par value, it is difficult to see how these two representations could have been understood literally, or otherwise than that the defendant was disappointed in the amount of sales, and that continued prosperity in a mail order business was always uncertain, and the accounts of consumers, purchasing on a part-payment plan, a more or less speculative investment.

At best, we are of the opinion that the plaintiff had only the right to go to the jury on the clear-cut issue of whether the evidence clearly and convincingly established a representation that, by reason of the loss of business, the financial future of the company was uncertain and even hazardous, making it distinctly to the pecuniary advantage of the then stockholders to dispose of their stock. We do not overlook the fact that representations, each in itself innocent and, taken alone, insufficient foundation for an action in deceit, may be so presented and combined as to falsely color all that is said and to materially mislead and deceive the plaintiff. Thus to the extent that the representation that the price offered was a large price, and that the defendant intended to sell half of his own stock, may have tended to accentuate or emphasize the impression of possible impending· financial uncertainties, or even difficulties, on the part of the company, such representations may be relevant; but only as producing such main impression, not as each in itself being a sufficient basis for recovery.

We are of the opinion that the court was right in the position taken that, in order to establish a cause of action, it was unnecessary that the defendant should have secured a direct benefit from the sale. James-Dickinson Farm Mortgage Co. v. Harry, 273 U. S. 119, 47 S. Ct. 308, 71 L. Ed. 569; Hindman v. First National Bank, 112 F. 931, 57 L. R. A. 108 (C. C. A. 6). We are also of the opinion that if a principal officer of a corporation, by his representations to a stockholder, deceitfully and fraudulently creates a materially false impression as to the financial condition of the corporation, or the true worth of its stock, the stockholder is justified in accepting such representations as founded in fact, and may act thereon without independent verification from the books of the company. But upon trial for deceit care should be taken to limit the evidence to strictly relevant facts and circumstances and to avoid that which might create sentimental prejudices. As outlined above, the issue is simple and clear-cut—did the defendant falsely and fraudulently create the impression that it was to the financial advantage of the stockholders to sell their stock—and this issue should be presented to the court and jury upon the principles hereinabove stated.

The judgment of the court below is reversed, and the cause is remanded for a new trial.