## TENNESSEE WESLEYAN COLLEGE v. COFFEY et al.

## SAME v. KENT.

### Nos. 7940, 7941.

Circuit Court of Appeals, Sixth Circuit.

June 29, 1938.

J. A. Fowler, of Knoxville, Tenn.: (J. J. Lynch and Lynch, Phillips, Hall & Allison, all of Chattanooga, Tenn., and J. A. Fowler and Fowler & Fowler, all of Knoxville, Tenn., on the brief), for appellant Tennessee Wesleyan College.

William L. Frierson, of Chattanooga, Tenn. (William L. Frierson, R. H. Williams, R. P. Frierson, and R. P. Williams, all of Chattanooga, Tenn., on the brief), for C. S. Coffey, receiver.

J. B. Sizer, of Chattanooga, Tenn. (J. B. Sizer, Estes Kefauver, and Sizer, Chambliss & Kefauver, all of Chattanooga, Tenn., on the brief), for Paul J. Kent, receiver.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The University of Chattanooga paid its $50,000 debt to Tennessee Wesleyan College with a mortgage participation certificate of like amount maturing in 1933 issued by the First National Bank of Chattanooga. The bank cancelled the certificate, issued to the college a new certificate of like amount but of later maturity, and loaned the college $50,000 upon it. Out of this transaction if unitary, or the series of transactions if not, grew two suits, one, in equity by the college against the receiver of the bank to set aside the participation certificate, to impose liability therefor on the bank and to set off such liability against the note on the ground of fraud on the part of the bank; the other, at law by the receiver of the Chattanooga National Bank as transferee against the college upon the note. The bill in equity was upon motion dismissed and judgment given on the note in the suit at law. From the decree in the one case, No. 7940, and from the judgment in the other, No. 7941, the college appeals.

Prior to June 27, 1931, the university was indebted to the college in the sum of $50,000, which it was entitled to receive in

cash. The university on that date possessed a large amount of mortgage participation certificates issued by the First National Bank and requested the college to permit it to cancel $50,000 of such certificates and to have a like amount issued by the bank to the college in lieu of its debt. The college wishing to make the certificate a part of its permanent endowment fund, and believing it to be a safe 6% investment, assented. It also required $50,000 for its immediate needs, which it expected to repay in installments. It therefore borrowed $50,000 from the First National Bank, executed its promissory note therefor, and pledged the new certificate as security. The charge of fraud on the part of the bank was that in response to inquiry made of its officers and agents untrue representations were made upon which the college relied in accepting the certificate from the university and substituted certificates from the bank. When required to make this allegation more specific its bill was amended to show that the representations were contained in a letter written by W. E. Brock in response to an inquiry by Bretske on behalf of the president of the college as to the bank's participation certificates. Bretske was a representative of the university. Brock was likewise a representative of the university, but was also a vice-president and a director of the bank. According to the amended bill the president of the college had asked Bretske for information from the bank as to the nature, condition and value of its certificate. Later Bretske informed the president that he had called Brock for the desired information and had received a letter which was self explanatory. The college, knowing Brock's position with the bank, relied upon the representations contained in the letter, accepted the new certificate from the bank, cancelled its debt to the university, and gave its note to the bank with the new certificate as collateral. The representations in the Brock letter in respect to loans by the bank having been made only upon property appraised at 50% of its value, and that the certificates were a safe investment, are alleged to be untrue. It is moreover alleged that the assets of the mortgage pool had become greatly impaired, and that the bank was under a duty to inform the college of that fact before the latter accepted the certificate. The Brock letter is printed in the margin. [1]

Giving the allegations of the bill a construction most favorable to the college, the court held as a matter of law that the college had bought its certificate from the university and not from the bank, that the Brock letter was written not on behalf of the bank but either in his individual capacity or in his capacity as a trustee of the university, and that Brock had no authority to speak for the bank. The court thereupon dismissed the bill as stating no right to rescission.

---

[1] "Brock Candy Company
"Chattanooga, Tenn., May 1, 1931
"Mr. S. F. Bretske,
"University of Chattanooga,
"City.

"Dear Jack: With reference to your inquiry for information for Dean Robb, beg to advise that I wrote him under date of the sixteenth.

"For years and years we have invested endowment funds for the University in Participating Trust Certificates on first mortgage Chattanooga real estate, 6% interest payable semi-annually and these loans are made by the bank after the property has been appraised on about a fifty percent appraisal value. The bank's record for making these loans has proven that they are the safest investment that we could find.

"The Participation Certificate is simply gotten up for the convenience of the purchaser as these certificates frequently cover quite a number of loans on various buildings in different sections of the city as it is very seldom that the bank makes a loan of as much as $50,000.00 on any one piece of property. Yet for each participating certificate there is an equal amount of first mortgage real estate set aside which that certificate covers, which makes it safe for everybody.

"The Bank holds the mortgages and simply collects the interest which is used to redeem the coupons. I might say that our Church Extension Board at Saint Louis, Missouri has been buying these Certificates and they say they are the safest thing they can find, and I am sure Dean Robb and his board could find nothing safer.

"We can have transferred from the University to Tennessee Wesleyan either of three certificates, one of which is due February 15, 1933, and one March 15, 1933, and one July 15, 1933. One is just as good as the other, except they fall due on different dates.

"If they should decide to invest in something else at that time, that would of course be their privilege.
"Your friend,
"(s) W. E. Brock
"WEBrock–DB"

■ We are unable to view this holding as erroneous. If we conceive the various steps by which the university paid its debt to the college and surrendered its claim on the bank and the steps by which the college secured a new certificate and a loan thereon from the bank as successive steps in a unitary tripartite transaction, then there can be no rescission without the university being made a party to the suit. If we look at the arrangement of the college with the bank as a transaction separate and distinct from its agreement with the university to accept a participation certificate in settlement of the debt, then the contract sought to be rescinded was but the exchange of one certificate for another, and since the allegations are that the securities supporting the certificates had already become greatly impaired, there was no loss to the college. While the substituted certificate bore a later maturity date than that surrendered by the university and the latter was entitled to have its certificate redeemed for cash when due, there is nothing in the bill or its amendments to show that the university would have cashed its certificate when due and that the college did not desire to do so had there been no reissue is clear from the announced purpose that it wished to retain the certificate as part of its permanent endowment. The restoration of the status quo would but give to the college a certificate of no greater value than the one now possessed by it.

Aside from this, however, it does not appear that the bank had made any false or fraudulent representations to the college. Brock was not authorized to speak for it, and it is clear from the terms of his letter that the information conveyed to Bretske was in his capacity as an officer and trustee of the university. The bank was a stranger to that part of the transaction by which the university agreed to pay its debt to the college with the bank's participation certificate and the college agreed to receive it. While it is alleged that the bank was the investment agent for funds of the university, there is nothing in the bill to show that the bank was the agent of the university in the transaction by which it cancelled its obligation to the college. The negotiations with respect to that agreement were handled for the university by its officers.

■ Nor did the circumstances alleged impose any duty of disclosure upon the bank with respect to the status of the securities in its mortgage pool. No inquiry was made of the bank by the college whereby such obligation might arise. As was said in Blakeslee v. Wallace, 6 Cir., 45 F.2d 347, at page 350: "But it is contrary to established principles of law that a duty of practically unlimited, general disclosure may be created by the bare statement of the plaintiff that [he] relies upon the defendant for advice, or that a charge of fraud may be predicated at law upon a failure by the defendant, under such circumstances, to disclose some fact or facts known to him, but not the subject of direct inquiry. * * * The plaintiff had no legal right to place such a burdensome obligation upon the defendant."

■ In addition to the charge of misrepresentation and fraud growing out of the Brock letter, the bill alleges other false representations, and certain breaches of trust in respect to the management of the bank's pool and the merger of its pool with that of another bank. As to the first they are immaterial since they were made after the transaction was closed and could have had no possible effect as an inducement to the college to accept the reissued certificate. As to the second, the college is foreclosed by an adjudication in the Chancery Court for Hamilton County in a proceeding brought on behalf of all holders of mortgage participation certificates awarding such holders damages for breach of duty by the bank. The college was a party to such proceedings by virtue of the fact that it was a member of the class for whose benefit the proceedings were brought, Reo Motor Car Co. v. Gear Grinding Machine Co., 6 Cir., 42 F.2d 965, and besides the college in its bill recites the state court decree and by the stipulation claims the benefit of it. While the state court decree awards damages based only on liability common to all certificate holders, the breaches of trust here alleged furnish no grounds for liability to the college peculiar to it as distinguished from other certificate holders.

The decree in 7940 is affirmed. The judgment in 7941, reached by computation which is not challenged, is likewise affirmed.