**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John O'BOYLE, Defendant-Appellant.**

**No. 81–1601.**

United States Court of Appeals, Sixth Circuit.

Argued April 22, 1982.

Decided June 8, 1982.

Rehearing and Rehearing En Banc Denied July 20, 1982.

James W. Rini, Mount Clemens, Mich., for defendant-appellant.

Leonard W. Gilman, U. S. Atty., Detroit, Mich., Blondell L. Morey, Asst. U. S. Atty., for plaintiff-appellee.

Before KENNEDY and MARTIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PER CURIAM.

Defendant appeals his conviction for the interstate transportation of money taken by fraud. 18 U.S.C. § 2314. Defendant claims that the District Court applied an improper standard in denying his pre- and post-trial motions for judgment of acquit-tal. He further claims that the jury's verdict was not supported by the weight of the evidence because the government failed to prove that defendant's representations were fraudulent, or that they were relied upon. It is also urged that the testimony of the government's chief witness, Schell, is so contradictory as to not be credible.

In 1978 Schell and defendant formed a company, Intercontinental Equipment Company (ICE), which acted as a broker for buying and selling heavy construction equipment. Schell handled ICE's books and performed other administrative duties while defendant handled the actual buying and selling of equipment. Schell and his wife had the sole authority to sign checks for ICE. Blank signed checks were left at ICE's office for defendant's use. ICE began encountering financial difficulties in January 1979.

Schell testified that on January 17, 1979, defendant came to his house and informed him that "he was going to write a check for $26,000 and put it with some friend of his. He said that somehow or another he would double the money in a very short period of time..." and then ICE's creditors could be paid off.

A blank check, drawn on a Michigan bank, signed by Schell and left at the office, was filled out by defendant subsequent to this conversation. It was made out to one William Bartlett in the amount of $26,000. The notation on the check stated "Payment for 955–L." This check was converted into a bank money order in the amount of $26,000 in the name of Bartlett. Bartlett had been a friend and associate of defendant's for ten to fifteen years. Bartlett and defendant endorsed the money order and deposited it into the bank account of Gopher, Inc. in Texas. Gopher had been incorporated in January 1979. Defendant, his wife and Bartlett were officers. Bartlett testified that he did not know why Schell's $26,000 check had been made out to him. Defendant told him the money was to be put in Gopher's bank account to protect it from ICE's creditors and Schell's wife whom he was divorcing.

Although defendant testified that he and Schell formed Gopher, Schell denied investing in or being any part of Gopher. Schell testified that defendant told him that the $26,000 had been used to buy a piece of equipment for ICE, described as 955–L.

Neither Schell nor ICE has been repaid the $26,000.

■ The District Court's standard in deciding the motions for judgment of acquittal was whether, considering the evidence in the light most favorable to the government, there was evidence from which a jury might reasonably find the defendant guilty beyond a reasonable doubt. This is the proper standard for evaluating a motion for judgment of acquittal. *United States v. Collon*, 426 F.2d 939 (6th Cir. 1970).

■ Defendant argues that his representation that he was going to write a check for $26,000, put it with some friend, double the money in a short period of time and pay ICE's creditors is not an actionable representation, assuming arguendo that it was false, because the representation was only a manifestation of future intent and only representations regarding present intent are actionable. In *Blakeslee v. Wallace*, 45 F.2d 347 (6th Cir. 1930), the Sixth Circuit addressed the elements of an action for fraudulent representation in the face of a challenge that the alleged fraudulent representations related merely to matters of opinion, belief, expectation, or future intention and could not be made the basis for recovery in a stockholder's action against a general manager for fraud in inducing a stock sale. In *Blakeslee* this Court stated that a state of mind is itself a fact, and may be a material fact, about which false and fraudulent representations may be made. *Id.* 350. Promissory representations stand in the same light. *Id.* Therefore, the fact that defendant represented that he was "going" to do something, or that he "would" do something does not make these representations non-actionable on the grounds of futurity if he knew the statements regarding his state of mind were false at the time they were made.

■ Defendant also argues that the representations were not fraudulent because they were essentially true. A false or fraudulent representation, within the meaning of 18 U.S.C. § 2314, may be made by statements of half truths or the concealment of material facts, as well as by affirmative statements or acts. *See United States v. Allen*, 554 F.2d 398, 410 (10th Cir.), *cert. denied*, 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977); *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979) (identical language in mail fraud statute). In this case the concealment of material facts could be found in defendant's failure to tell Schell that his friend was to be no more than a mere conduit through whom the $26,000 would pass on its way to defendant's company, Gopher and in defendant's failure to tell Schell that the company was newly formed, had no capital, so that the investment would be speculative in nature, and that, accordingly, doubling the money in a short period of time would be improbable. The business relationship between defendant and Schell gave rise to a duty to disclose. Each performed a different function for ICE; defendant buying and selling equipment and Schell tending to accounting and administration. This created a need for mutual trust and dependence. Schell entrusted defendant with access to pre-signed checks. Defendant's interest in ICE, and knowledge of its creditors, apprised him of how the transfer of money to Gopher would adversely affect ICE. There is sufficient evidence to support the jury's conviction based on a half truth or concealment theory of fraud based on the relationship between the parties and the material nature of the omissions.

■ Defendant further argues that the evidence fails to show that Schell relied upon defendant's representations. On the contrary, the testimony suggests that defendant only had authority to fill out pre-signed checks for the limited purpose of buying equipment for ICE and needed Schell's approval for his "doubling" scheme. Defendant did in fact come to Schell's house, declared his intent and secured

 

Schell's acquiescence based on his representations prior to filling out one of the pre-signed checks. Had Schell known of defendant's transfer of the $26,000 to Gopher, he could have stopped payment on the check or taken steps to dissolve the partnership. Finally, Schell's concern for ICE's creditors suggests that he would not have acquiesced in defendant's use of the $26,000 had he known of the newness of Gopher, its lack of capital and defendant's involvement with it. All of these factors indicate reliance.

Defendant's remaining argument with respect to the credibility of Schell is without merit. *Kirkhof Mfg. Co. v. Sem-Torg, Inc.*, 312 F.2d 578 (6th Cir. 1963).

Accordingly, the judgment of the District Court is AFFIRMED.