## McNABB v. THOMAS et al.
### No. 10761.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 12, 1951.

Decided May 3, 1951.

Joseph T. Sherier, Washington, D. C., with whom George C. Gertman, Washington, D. C., was on the brief for appellant.

Thomas F. Guthrie, Graysville, Tenn., of the Bar of the Supreme Court of Tennessee, pro hac vice, by special leave of Court, and Charles E. Hutsler and Charles K. Chaplin, Washington, D. C., for appellees.

Before PROCTOR, BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

O. E. Thomas, one of the appellees, came to Washington in June 1948 to seek a buyer for a Tennessee peach orchard. Through the medium of the Senate Realty Company, he was put in touch with appellant John D. McNabb, who had listed his Washington real estate with the realty company for sale or exchange. After a series of negotiations, including a trip to Tennessee by McNabb to examine the orchard, Thomas and McNabb, on July 12, 1948, entered into an agreement providing that Thomas would convey the orchard to McNabb in return for McNabb's equity in the District of Columbia real estate, valued at $25,000, $4,000 in cash and $8,500 in four equal annual installments of $2,125 each. The deed to the orchard was executed and turned over to McNabb by Thomas on July 16. McNabb immediately began picking peaches and, four days later, on July 20, deeded his Washington property to Thomas' daughter, Katherine Slater, at Thomas' direction. After another four days of picking, on July 24, McNabb left the orchard and returned to Washington. On August 9, he instituted this suit to set aside the exchange of real estate on the ground of fraudulent misrepresentations made by Thomas upon which he had relied to his detriment and generally to restore the *status quo ante*.

The trial judge denied relief to McNabb because he concluded that (1) there was no fraud or misrepresentation practiced by Thomas; and (2) McNabb did not rely upon the representations made by Thomas but upon his own independent investigation of the subject matter.

There is no need to discuss each of appellant's allegations of misrepresentation in detail.[1] Although the trial judge did not make specific findings with regard to each alleged misrepresentation, the record contains ample evidence to support his general finding that there was no fraud or misrepresentation practiced upon McNabb with regard to the allegations that Thomas (1) overstated the expected annual peach crop and the number of trees in the orchard; (2) represented that he had owned and operated the orchard for two years past; (3) estimated the cost of operating the orchard at $2,200. As to each of these issues, there was a conflict in the testimony of the principals and the other witnesses. The issues of fact thus raised could be resolved only by estimates of credibility, estimates which could best be made by the trial judge, who was the trier of fact below.[2] We do not find his conclusions on these points "clearly erroneous." Nor do we disturb his finding that, even if Thomas did represent that there were 140 acres in the orchard, "the plaintiff was advised by the recitations contained in the deed" that there were only 120 acres more or less.

There is only one representation about which there is no real conflict in the record and which does not depend upon evaluations of credibility: McNabb's contention that Thomas represented to him at the outset that the land was worth $55,000. This is corroborated directly by the testimony of the real estate broker, Cox, and indirectly by the admission of defendant Slater at pre-trial that she was present at a time when Thomas stated the value of the land to be $45,000. The only other evidence of value in the record is that this same orchard was offered for sale in 1947 for $6,000 and that Thomas purchased the land on July 16, 1948, for $7,000 plus some undisclosed portion of whatever profit might be made by him on resale of the property. That resale was ultimately made

1. "As a general rule, actual actionable fraud is the concealment of a fact which should have been disclosed, or is the representation of the existence of a material fact which did not exist. That representation must be positively made knowing it to be false, or recklessly and positively made without knowledge of its truth. The party to whom the representation is made must not only be warranted in accepting it, but he must actually accept it, and, relying on its truth, act as contemplated by the party making it." Baker v. Baker, 1924, 54 App.D.C. 214, 217, 296 F. 961, 964.

2. Wynne v. Boone, D.C.Cir., 1951, 191 F.2d 220.

to McNabb, who paid approximately $37,500 in real estate, cash and notes for it.

▇▇▇ An expression of opinion as to the value of property is ordinarily held not to be actionable because it is not a statement of fact.[3] But "In a sense any assertion is a statement of fact even though it be only an opinion. It involves at least * * * the belief of the utterer in the truth of what he says * * * and, unless it be such as no one could suppose the hearer would act upon, it may give ground for relief."[4] "Such a statement * * * when 'made under conditions which show that it was intended' by one uttering it 'to be treated as an immediate factor inducing action, and was made with knowledge that it would be accepted as a basis of action, instead of a mere element to be investigated before action, * * * becomes for all practical purposes a statement of fact.' "[5] Among the circumstances to be considered is whether the opinion is expressed "by a party having superior or perhaps exclusive knowledge to one without such knowledge and misrepresent[s] the actual views of the maker."[6] Thus, it is important to determine "whether the parties stand 'on an equality.' For example, we should treat very differently the expressed opinion of a chemist to a layman about the properties of a composition from the same opinion between chemist and chemist, when the buyer had full opportunity to examine."[7] So also, if the exaggerated statement of value is made with regard to something which has "an ascertainable market value," such as stock, it is a misrepresentation "of a fact, and not the mere expression of an opinion."[8] In sum, the inexperience, naivete or ignorance of one of the parties, when contrasted with the superior knowledge or opportunity for knowledge of the other party, may make that actionable which would not be if the dealings were between more equally matched parties.[9] The ability of each party to deal with the other, the steps taken to evidence the extent of reliance upon the representations of value—these tend to lend different perspective to otherwise similar fact situations.

The representation of value made here was with regard to a peach orchard. It might be argued that the value of such property depends so much upon such unpredictable factors as weather conditions,

3. See generally 5 Williston, Contracts, pp. 4167–4171 (1937); A. L. I., Restatement of Contracts, § 474; Byers v. Federal Land Co., 8 Cir., 1924, 3 F.2d 9, 11.

4. Taylor v. Burr Printing Co., 2 Cir., 1928, 26 F.2d 331, 334.

5. Southern Trust Co. v. Lucas, 8 Cir., 1917, 245 F. 286, 288–289 quoted in F. H. Smith Co. v. Low, 1927, 57 App. D.C. 167, 169, 18 F.2d 817, 819. See Slater v. Ruggles, 1920, 49 App.D.C. 277, 278, 263 F. 1021, 1022; Keeler v. Fred T. Ley & Co., 1 Cir., 1931, 49 F.2d 872, 874; Blakeslee v. Wallace, 6 Cir., 1930, 45 F.2d 347, 350.

6. Dellefield v. Blockdel Realty Co., 2 Cir., 1942, 128 F.2d 85, 90.

7. Vulcan Metals Co. v. Simmons Mfg. Co., 2 Cir., 1918, 248 F. 853, 856. In United States v. Rowe, 2 Cir., 1932, 56 F.2d 747, 749, Judge Learned Hand wrote: "True, the law still recognizes that in bargaining parties will puff their wares in terms which neither side means seriously, and which either so takes at his peril * * * but it is no longer law that declarations of value can never be a fraud. Like other words, they get their color from their setting, and mean one thing when exchanged between traders, and another when uttered by a broker to his customer. Values are facts as much as anything else; they forecast the present opinions of possible buyers and sellers, and concern existing, though inaccessible, facts. Such latitude as the law accords utterances about them, depends upon the hearer's knowledge that the utterer expects him to use his own wits; and while it may once have been true that one might safely use them to stuff any gull one brought to hand, liability has expanded as the law has become more tender towards credulity."

8. Zimmern v. Blount, 5 Cir., 1917, 238 F. 740, 743.

9. "It is a principle of law, as well as of natural justice, that greater consideration and care are due to persons known to be unable to take care of themselves than to those who are fully able to do so." Graffam v. Burgess, 1886, 117 U.S. 180, 185, 6 S.Ct. 686, 689, 29 L.Ed. 839.

plant diseases, market conditions, the willingness to cultivate intensively and to invest money, etc., that it falls within the area of speculative investments. Courts have been reluctant to hold statements as to the value of such properties actionable because of the many incalculable factors involved.[10] But we do not think that this case must depend upon the merits of Thomas' representation of value. Even if made and if considered material, thereby giving rise to the presumption that it induced the action complained of,[11] there is ample evidence in the record to rebut that presumption and to support the trial judge's finding that McNabb did not in fact rely thereon. Before consummating the exchange, McNabb undertook an independent investigation of the property. He visited the orchard twice, contacted a fruit broker in the area who was familiar with the property, and asked a county farm agent to report to him on the condition of the property. Thomas does not appear to have done anything to hinder the investigation in any way. Despite this investigation, McNabb testified that he relied solely upon Thomas' representations. Apparently, the trial judge did not believe this testimony but, instead, felt that Mc-

Nabb's subsequent course of action indicated his reliance on his own investigation. McNabb proceeded throughout in what seemed to be an intelligent fashion. He knew enough to make inquiry and did so. He was aware of the sort of people who might be of help to him and contacted them. It would seem that, by the time he executed his deed of his Washington property to Thomas, McNabb should have had before him enough of the components of value to make his own estimate thereof. That he was more than ordinarily capable of appraising such components is indicated by the fact that he was an educated man who had had some experience with real estate, even to the extent of having at one time been licensed as a real estate salesman in the District of Columbia.

Under the circumstances, we think the lower court's conclusion that McNabb entered into the transaction in reliance solely upon his own investigation should not be disturbed.[12] The law of fraud cannot be invoked to invalidate a bad bargain arrived at by informed parties.

Affirmed.

PROCTOR, Circuit Judge, dissents.

10. See, e. g., Byers v. Federal Land Co., 8 Cir., 1924, 3 F.2d 9, 11–12 (8th Cir., 1924).

11. 5 Williston, Contracts, p. 4229 (1937); A. L. I., Restatement of Contracts, § 479.

12. Cf. Farnsworth v. Duffner, 1891, 142 U.S. 43, 50–51, 12 S.Ct. 164, 35 L.Ed. 931; Southern Development Co. of Nevada v. Silva, 1888, 125 U.S. 247, 259, 8 S.Ct. 881, 31 L.Ed. 678; Sacramento Suburban Fruit Lands Co. v. Klaffenbach, 9 Cir., 1930, 40 F.2d 899, 902–903.