**Milton ISEN et al., Appellants,**

v.

**CALVERT CORPORATION, Appellee.**

**No. 20214.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 17, 1966.

Decided April 20, 1967.

Mr. Seymour Friedman, Washington, D. C., with whom Mr. H. Max Ammerman, Washington, D. C., was on the brief, for appellants.

Mr. Mark P. Friedlander, Washington, D. C., with whom Messrs. Mark P. Friedlander, Jr., Blaine P. Friedlander, Washington, D. C., and Harry P. Friedlander, Arlington, Va., were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and DANAHER and TAMM, Circuit Judges.

DANAHER, Circuit Judge.

The District Court entered summary judgment for the corporate appellee in an action brought by the appellants who sought damages following a real estate transaction. The District Judge made no findings and rendered no opinion. We find ourselves unable to perceive the basis upon which in granting summary judgment the District Judge had concluded that the corporate appellee as the moving party was entitled to judgment as a matter of law, FED.R.CIV.P. 56

(c), after deciding that there was no genuine issue as to any material fact. It is our judgment that the case should have been tried [1] and accordingly we reverse.

Before the District Judge were the pleadings, the depositions of Milton Isen and of his wife Adele, the affidavit of one M. F. Weissberg tendered by the corporate appellee in support of its motion, an affidavit by Milton Isen in opposition thereto, a statement of "undisputed facts" filed pursuant to District Court Rule 9 and as an exhibit a memorandum of sale dated May 21, 1964.

The exhibit describes one Patricia S. Reyes as the "Purchaser" [2] and was executed by her in that capacity. The corporate appellee had accepted the memorandum of sale and acknowledged the instrument to be the "contract" through one William R. Lichtenberg, its treasurer. The document called for settlement on or before August 15, 1964, and by its terms the purchaser was bound to pay in cash the total sum of $290,000. The seller was bound to transfer certain real property described as "Lot 815, Square 1300, District of Columbia, being approximately 27,930 square feet of land together with improvements" with further specific reference that the property to be conveyed contained "apprx" [3] "12,500 sq. ft. zoned C–2; balance is zoned R–3." It was undisputed in the District Court that the contract had been made and that the item in issue related to the area of commercial zoning. Thus, at some time not appearing but after the settlement had been made and the property had been conveyed, Milton Isen had called M. F. Weissberg and had said that the "zoning line was only 100 feet back" rather than 125 feet. Thus, the seller had not conveyed 12,500 square feet of land available for commercial purposes. That the deficiency of 2,500 square feet might be deemed material seems to have been recognized by the respective parties. Following Mr. Isen's call, Weissberg according to his affidavit had checked "at the District Building and, after searching out some old records, found that the additional 25 feet was a special use granted long before."

Thus Mr. Weissberg's affidavit pointed out, the parties had assumed that the commercial line was 125 feet from the front line of the property and this "was a mistake on everyone's part * * *."

Mr. Weissberg's affidavit recited further:

"Mr. Isen insisted that affiant check with Mr. Lichtenberg to see if he, Isen, could not get back some of the money. Affiant did check with Mr. Lichtenberg, and Mr. Lichtenberg offered to get the 25-foot strip rezoned at no cost to Mr. Isen, or to buy back the property."

Mr. Weissberg so informed Mr. Isen and "went further to say that affiant also would buy the property at the price Isen had paid for it" but Mr. Isen stated that he was going to see his lawyer.

Mr. Isen on counter affidavit asserted that the contract had been prepared in

---

1. Evers v. Buxbaum, 102 U.S.App.D.C. 334, 253 F.2d 356 (1958); Dewey v. Clark, 86 U.S.App.D.C. 137, 143, 180 F.2d 766, 772 (1950); 6 MOORE, FEDERAL PRACTICE ¶ 56.15[3] (1965).

2. The instrument also notes an assignment by Patricia S. Reyes of all her "right, title and interest in the foregoing contract to Arnold Heft." The record material before us indicates no further participation in the transaction by Patricia S. Reyes, but it seems clear beyond peradventure that she had acted solely as a "straw" with the full knowledge of the respective parties.

The complaint describes the appellant Milton Isen "as the true party in interest and the settlement was actually made in such fashion as to transfer the property to the plaintiffs herein." The deposition of the appellant, Adele Isen, indicates that she had no personal knowledge of the details of the transaction.

3. Milton Isen in his deposition explained that Mr. Lichtenberg had inserted the abbreviation to indicate that the frontage was not "a clear cut 100 feet" but was "99, point something."

accordance with terms and conditions requested by the seller and contained an express representation allegedly "inserted by the agent M. F. Weissberg at the request and approval of the seller, that the property was zoned to the extent of 12,500 square feet, in category C–2." Isen had accepted and relied upon "such representation as the fact," and had agreed to pay the purchase price of $290,000 "because of his evaluation of the property based upon it containing at least such area of C–2 zoning," his affidavit concluded.

The corporate appellee in its Rule 9 statement had asserted as an undisputed fact that all "the evidence shows that a mutual mistake was made." A like statement appeared in the Weissberg affidavit. The corporate appellee tendered no affidavit except that of Weissberg.

Perhaps the District Judge was of the view that the averments of the Isen affidavit could be laid aside in view of the testimony he had given on deposition when under examination by counsel for the corporate appellee. It fairly appeared that Isen had entered into an agreement with one Arnold Heft pursuant to which Isen was to specify certain property which he might desire. Thereupon, Heft was to procure that property and thereafter trade it to Isen as part consideration for yet other but unimproved property which Heft desired to acquire from Isen. Isen testified he had been advised that a property trade so accomplished might result in his saving, or at least postponing, an income tax payment of some $50,000.

Isen had rejected the Lichtenberg proposal that the transaction be rescinded and that the entire purchase price be refunded to Isen.[4] Isen explained on deposition that he believed he had told Mr. Lichtenberg "I acquired this property through a trade and that I had no way of knowing how I could undo this particular deal. * * * Then I would have whatever tax consequences would have befallen me had I made a cash sale with Heft to start with."

Isen also rejected the Lichtenberg proposal that he undertake to secure rezoning of the disputed 25-foot strip without cost to Isen. Instead, he engaged the services of another in an effort to rezone the *entire* tract, not merely the 2,500 square feet in question.

From materials of record, the trial judge may have concluded that in furtherance of the Heft-Isen arrangement, the purchaser had instigated the entire transaction. Isen had in mind "that when Arnold Heft acquired [the property] he could trade it to me," he deposed. It was clear that Isen had first in the name of a corporation controlled by him submitted through Weissberg Bros. Realty, as agent, a proposal to acquire the property in suit for $235,000. On May 14, 1964, Isen submitted another proposal with Patricia S. Reyes as "straw" calling for a payment of $275,-000, and with 12,500 square feet shown to be zoned as commercial. On May 21, 1964, the final proposal had been drawn, culminating in the memorandum of sale earlier mentioned. Mr. Weissberg at some point had shown and later delivered to Isen a plat of the property in suit which "indicated the amount of zoning and the size or amount of the footage the property contained in general," Isen testified.[5] He had dealt with the Weissberg Bros. in the instant transaction, had furnished Patricia S. Reyes as the straw, and Weissberg Bros. had prepared the contract in their office. Mr. Weissberg and Mr. Isen thereafter went over to Mr. Lichtenberg's office with the document.

4. Cf. Shappirio v. Goldberg, 192 U.S. 232, 242, 24 S.Ct. 259, 48 L.Ed. 419 (1904).

5. Mr. Isen was no novice in the local real estate field. For more than twenty years he had been engaged in real estate promotions. He had in his real estate office plat books and a zoning book published by the District of Columbia. In determining how property was zoned, he testified, he would either "look it up in the zoning book or call up the District." On occasion he went to the zoning office to ascertain how certain property was zoned.

When deposing Mr. Isen, counsel for the appellee brought out:

"Q. Now, is it a fact that the representation as to zoning was made to you by your real estate broker? A. Initially, yes.

\* \* \* \* \* \*

"Q. During this period, and your great interest in the property, you never checked what the zoning was? A. No.

"Q. Was there some reason why you didn't? A. No, other than it was represented to me and it was in the contract what they represented.

"Q. The real estate firm represented it to you and you didn't take their word they checked the zoning, did you? A. Well, if I had it in the contract, I didn't think I had an obligation to check it."

Isen could recall no conversation with Lichtenberg as to the zoning, he testified.

The District Judge, in light of such references and others of record, may have concluded that Isen should not prevail.[6] But he was not free, short of a trial, so to conclude on the record before him for he was bound to view the materials then available in the light most favorable to the party opposing the motion.[7]

The Weissberg affidavit tendered by the movant purported to establish that there had been a mutual mistake of fact. But Weissberg, to the extent that he undertook to set forth facts "of his personal knowledge" could not know and did not purport to state what was in the mind of Lichtenberg, treasurer of the corporate appellee. Additionally it may well develop after exploration at trial that Weissberg—not Lichtenberg—had incorporated into the proposal the representation that the disputed area included 12,500 square feet zoned for commercial use. It may appear that Weissberg was at all times the agent of Isen and that the purchaser in fact had relied upon Weissberg's representation as to the zoned area. Weissberg in his affidavit set out that the plat books are drawn in such scale as to be difficult to read and "that the lines delineating the commercial areas are usually penned in broad-brush lines." It is possible, so far as this record shows, that what Isen after settlement[8] claimed to have discovered as facts concerning the actual zoning, had been apparent at all times either to him or to his agent—if Weissberg shall be found to be his agent.[9]

To be sure, the corporate appellee had executed the memorandum of sale and was bound to know its terms.[10] We have pointed out that actionable fraud may exist where the representation of a *material fact which is relied upon* is false and

"is made as if the defendant had actual knowledge of it, when he is conscious he has no such knowledge, or *when it involves his own business or property* as to which he is bound and

---

6. No substantial evidence is available to establish whether the 2,500 square foot diminution in the commercial area resulted in a dollar loss or whether the R-3 permitted use of some 17,930 square feet coupled with the remaining permitted commercial use of the area in question fairly represented in value the amount of the full purchase price.

7. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); cf. F. S. Bowen Electric Co. v. J. D. Hedin Construction Co., 114 U.S. App.D.C. 361, 364, 316 F.2d 362, 365 (1963).

8. We do not know whether the corporate appellee pursuant to the contract as assigned to Heft first conveyed to the latter who then reconveyed to Isen or whether the deed ran directly from the corporate appellee to the appellants.

9. McNabb v. Thomas, 88 U.S.App.D.C. 379, 382, 190 F.2d 608, 611 (1951); Seek v. Harris, 76 U.S.App.D.C. 404, 132 F.2d 19 (1942) on its facts clearly is not to the contrary; cf. Owen v. Schwartz, 85 U.S. App.D.C. 302, 177 F.2d 641 (1949) and cases cited.

10. Paterson v. Reeves, 113 U.S.App.D.C. 74, 304 F.2d 950 (1962).

must be presumed to know the truth." (Emphasis added.) [11]

And we reiterate, such misrepresentation, to predicate recovery, must be of a material fact which is relied upon, that reliance must be reasonable,[12] and damages must be shown.

It sufficiently appears that in various aspects this record discloses what seem to us to have been genuine issues of material fact. It is certainly so that we can not say that the corporate appellee was entitled to judgment as a matter of law. It follows that the judgment of the District Court must be

Reversed.

---

11. Darnell v. Darnell, 91 U.S.App.D.C. 304, 307, 200 F.2d 747, 749 (1952); cf. Stein v. Treger, 86 U.S.App.D.C. 400, 403, 182 F.2d 696, 699 (1950); as to negligent misrepresentations, see United States v. Neustadt, 366 U.S. 696, 705 n. 15, 706 text and n. 16, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).

And see generally, W. PROSSER, TORTS 726–728 (3d ed. 1964).

12. W. PROSSER, TORTS 729–734 (3d ed. 1964); 1 HARPER & JAMES, TORTS § 7.13 (1956), and cases cited, note 9 *supra*.