**UNITED STATES of America**

v.

**William E. HANNIGAN et al.**

**Crim. No. 12365.**

United States District Court
D. Connecticut.

May 9, 1969.

Jon O. Newman, U. S. Atty., David Margolis, Asst. U. S. Atty., Hartford, Conn., for plaintiff.

Maxwell Heiman, Bristol, Conn., James Sherman, Harry W. Hultgren, Thomas Groark, Paul Orth, Hartford, Conn., for defendants.

## RULING ON MOTIONS TO DISMISS THE INDICTMENT

Blumenfeld, District Judge.

The defendants in this prosecution for mail fraud and conspiracy under 18 U.S. C. §§ 1341[1] and 371 are Technicolor, Inc.; J. Charles Distributing Co., a wholly-owned subsidiary of Technicolor, Inc.; Development Enterprises, Inc. of New York and its president, Rubin Sterngass; Development Enterprises, Inc. of Connecticut and its president, Charles Hegel; Cine-Tech Corp. and its president, William Hannigan; and employed salesmen of Cine-Tech.

Summarizing the allegations in the indictment, the scheme to defraud was one whereby Technicolor would distribute obsolete home movie equipment to the public through the various corporate and individual defendants. Technicolor, through J. Charles Distributing Co., sold the equipment in question to local distributors—in this case Development Enterprises of Connecticut and New York, and Cine-Tech. These companies would distribute directly to the buying public through commissioned salesmen.

The gravamen of the offense is that in selling this equipment to the public, these local distributors, through the commissioned salesmen, made fraudulent misrepresentations to the purchasers as to the value of the items sold. These misrepresentations were made with the knowledge and approval of, and pursuant to the direction of, all the corporate defendants.

In order to understand the allegedly fraudulent conduct, it is necessary to understand the method used by the defendants with the buying public. What the defendants sold was a movie camera, a movie projector, a lightbar, carrying case, and screen (called "equipment") and an agreement to process exposed film and furnish replacement rolls (called "services"). The equipment and services were sold as a package deal. The presentation was that if the customer purchased 600 rolls of Technicolor film at a "reduced cost" of $1.00 a roll and agreed to have the film processed by Technicolor, then a movie camera, projector, lightbar, screen and case would be given to the customer at no cost by Technicolor. While the purchaser ostensibly paid for the entire 600 rolls of film, he received only 1 roll. When that roll was used, he would send it to Technicolor together with the processing costs and would get back the developed roll and another roll of film. Thus, in essence, what the purchaser received for his $600 was a movie camera, projector, lightbar, case, screen, 1 roll of film and the promise of 599 more rolls which would be received only after prepaying processing charges for each roll received.

The material misrepresentations which the government alleges in the indictment are as follows: (1) That while the defendants told the purchasers that they were buying 600 rolls of film for the $600 and that the camera, projector and rest of the equipment were given free, the purchasers were, in fact, purchasing the equipment at a grossly inflated price and that the cost of the film was hidden in the inflated price charged for processing; (2) That the film the purchasers were to receive would be Technicolor film, when in fact it was to be Kodak or Gaevert film; (3) That the defendants misrepresented the value of the camera, projector and other equipment, in that

1. 18 U.S.C. § 1341 reads:
   "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting so do to, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, * * * shall be fined not more than $1,000 or imprisoned not more than five years, or both."

they said that the projector would sell on the open market for between $175 and $225, while in fact it was already selling on the market for $99.50; that the value of the camera was $150 when in fact it was approximately $50; and that the entire package of equipment was worth between $500 and $600 when in fact it was worth approximately $280. Essentially, what the government alleges is that while the purchasers were led to believe they were paying $600 for 600 rolls of film and were getting the equipment free, they were in fact paying $600 for approximately $280 worth of equipment because the cost of the film was hidden in the inflated cost of processing.

The defendants move to dismiss the indictment on three grounds: (1) the indictment fails to allege that anyone was in fact defrauded by the scheme; (2) the indictment fails to allege fraudulent conduct, because the misrepresentations were merely "puffing" not prohibited by the statute; and (3) if the statute does prohibit the conduct alleged, then it is in violation of the due process clause of the fifth amendment for failing to set forth a readily ascertainable standard of conduct.

### *Failure to Allege that Anyone was Defrauded*

■ The general rule is that to constitute the offense of mail fraud, it is not necessary to allege or prove that anyone was in fact defrauded. *See, e.g.,* United States v. Andreadis, 366 F.2d 423, 431 (2d Cir.1966), cert. denied, 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967); United States v. Rowe, 56 F.2d 747, 749 (2d Cir.) (L. Hand, J.), cert. denied, 286 U.S. 554, 52 S.Ct. 579, 76 L.Ed. 1289 (1932). The defendants, however, contend that this case is controlled by United States v. Baren, 305 F.2d 527 (2d Cir.1962), which they read as setting forth a requirement of allegation and proof that someone was in fact defrauded in mail fraud cases.

In *Baren,* the mail fraud convictions of the appealing defendants were affirmed. The only language in the opinion which supports the defendants' position is the comment, made in passing, that "[i]n every mail fraud case, there must be a scheme to defraud, representations known by the defendants to be false and *some person or persons must have been defrauded."* 305 F.2d at 528 (emphasis added). The *Baren* court employed no discussion of why, or in what circumstances, proof that someone was in fact defrauded became an essential element of the offense of mail fraud; nor, apparently, was the issue before the court.

The comment just quoted from *Baren* was subsequently described as "a *sui generis* exception, suggested by the peculiar facts of *Baren,* to the general rule that in prosecutions under 18 U.S.C. § 1341 the Government is not required to prove that individual purchasers were actually defrauded." United States v. Andreadis, *supra,* 366 F.2d at 431. The *Andreadis* court went on to state:

> "In a case like *Baren,* in which the product apparently could do what its advertising, and its other promotional matter said it could do, *it may well be advisable* to require that the Government produce evidence tending to prove that, despite this, purchasers were in some manner defrauded * * *." *Id.* (Emphasis added.)

This is far from a holding that it is necessary to allege or prove that someone was in fact defrauded as an essential element of the offense.

### *"Puffing"*

The defendants' second contention is that, in essence, the material misrepresentations which the government alleges all relate to the *value* of the equipment sold to the public and that such misrepresentations as to value are "traders talk" or "puffing" and cannot be considered fraud for the purposes of this statute. Since this is a motion to dismiss, it must be accepted as true that, although the "sales pitch" was that the equipment was given free, in fact, the equipment was *sold* to the purchasers

for $600. It also must be accepted as true that the defendants misrepresented that the projector would sell on the market for between $175 and $225, when in fact it sold on the market for $99.50; that the camera was worth $150 when in fact it was worth $50; and that the value of the total package of equipment was between $500 and $600 when in fact it was worth approximately $280.

The defendants contend that misrepresentations of value must always be considered "puffing" so as not to come within the prohibition of 18 U.S.C. § 1341. Assuming, for the purposes of this argument, this to be true, the conduct of the defendants as alleged in the indictment goes beyond mere exaggerations of value. The defendants in this case did not say "This projector is worth between $175 and $225." Rather, what the indictment alleges is that the defendants said "This projector will sell on the open market for between $175 and $225." While both statements are directed at inducing the purchaser to believe the worth of the projector to be between $175 and $225, there is a difference between the two statements. The first statement, while a direct statement of value, might be regarded as stating a subjective fact or opinion. The second statement is a statement of an objective fact—what the projector will sell for on the open market.

There is a good reason why the first statement—the direct statement of a subjective fact—should not be considered a fraudulent misrepresentation. As a statement of a *subjective fact*, it is clear that this is only the speaker's opinion. The speaker is not relating the value of the object to external objective criteria, but rather is making a direct statement of his subjective evaluation of the object. On the other hand, the second statement—the misrepresentation of what the object will sell for— is a misrepresentation of an *objective fact*—market price. It is related to an

external objective criteria—what is occurring or will occur on the open market. Thus, it has been authoritatively recognized that the misrepresentation of the market price of a standardized product may be considered actionable fraud, while direct statements of opinion of value may not be. 1 F. Harper and F. James, The Law of Torts § 7.11, at 574.

Moreover, the cases do not support the defendants' contention that misrepresentations of value can never come within the prohibition of the mail fraud statute, 18 U.S.C. § 1341. As Judge Learned Hand stated in United States v. Rowe, *supra*, 56 F.2d at 749:

> "True, the law still recognizes that in bargaining parties will puff their wares in terms which neither side means seriously, and which either so takes at his peril * * *; *but it is no longer law that declarations of value can never be a fraud.* Like other words, they get their color from their setting, and mean one thing when exchanged between traders, and another when uttered by a broker to his customer. *Values are facts as much as anything else* * * *."* (Emphasis added.)

Judge Hand went on to state that a misrepresentation of value coupled with an intent to defraud is actionable under the mail fraud statute. *Id.*[2]

*Rowe* was followed in McNabb v. Thomas, 88 U.S.App.D.C. 379, 190 F.2d 608 (D.C. Cir.), cert. denied, 342 U.S. 859, 72 S.Ct. 86, 96 L.Ed. 646 (1951). *McNabb* was a suit to set aside the sale of land on the ground that the seller had fraudulently misrepresented the value of the land. The court, quoting with approval the above excerpt from *Rowe*, stated:

> "[A] statement [as to value] when 'made under conditions which show that it was intended' by one uttering it 'to be treated as an immediate factor inducing action, and was made

2. In *Rowe*, the convictions of the defendants were affirmed where it was shown that the defendants had misrepresented the value of land which they were selling through the mail.

with knowledge that it would be accepted as a basis of action, instead of a mere element to be investigated before action, * * * becomes for all practical purposes a statement of fact.'" 190 F.2d at 610 (footnotes omitted).

While *McNabb* was a suit in common law fraud, it has been held that "fraud" under the mail fraud statute is at least as broad as common law fraud. United States v. Whitmore, 97 F.Supp. 733, 735 (S.D.Cal.1951).

In the present case, as alleged in the indictment, the defendants not only misrepresented the price the equipment would sell for on the market, with an intent to defraud, but also, through further misrepresentations, dissuaded the purchasers from going out to make an independent ascertainment of the market price of the equipment. The defendants stated that the projector and camera were not yet marketed, while in fact the equipment had been on the market for some years. The indictment alleges sufficient facts to constitute an offense under 18 U.S.C. § 1341.

### Due Process

The defendants' related contention is that if the statute is read to prohibit misrepresentations of value, then it is violative of the due process clause of the fifth amendment for two reasons: (1) it is essentially creating a new offense which is not ascertainable in the statute because "neither the [words of the] statute nor any court interpreting it gave any warning to these defendants that their conduct could lead to criminal prosecution;" and (2) there is no standard in the statute by which the jury can measure the defendants' conduct.

The first reason asserted by the defendants requires little comment. No new offense is being created. Title 18 U.S.C. § 1341 prohibits the use of the mails in the execution of a scheme to defraud. As discussed above, as long ago as 1932, Judge Hand held that misrepresentations as to value could constitute fraud under 18 U.S.C. § 1341.

Secondly, the defendants contend that to consider misrepresentations alleged in this indictment actionable, would "require the defendant[s] to ascertain at [their] peril the true value of [their] product." Again, the defendants misread the indictment. What the indictment alleges as misrepresentations are not statements of *opinion*, but rather affirmative misrepresentations of readily ascertainable objective facts—the going price of the equipment on the open market. Moreover, a reading of 18 U.S.C. § 1341 to prohibit misrepresentations of value will not require the defendants to ascertain the true value of their products "at [their] peril," but rather would merely require that sellers either fairly represent the value of their product or make it clear that they are merely giving opinions.

The contention of defendant Mockus that this court does not have jurisdiction does not merit discussion. *See,* e. g., United States v. Cohen, 145 F.2d 82, 90 (2d Cir.), cert. denied 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed 637 (1944).

The motions are denied.