**UNITED STATES of America**

v.

**Richard J. GORDON, Defendant.**

**Nos. 79–CR–135, 80–CR–24.**

United States District Court,
N. D. New York.

May 30, 1980.

George H. Lowe, U. S. Atty., N.D.N.Y., Albany, N. Y., for plaintiff; William J. Dreyer, Asst. U. S. Atty., Utica, N. Y., of counsel.

Herald Price Fahringer, New York City, E. Stewart Jones, Jr., Troy, N. Y., for defendant; Lipsitz, Green, Fahringer, Roll, Schuller & James, New York City, of counsel.

## MEMORANDUM

JAMES T. FOLEY, District Judge.

This memorandum sets forth the reasoning in support of the rulings in my decision and order of May 27, 1980, denying in its entirety the omnibus motion of the defendant and granting the independent motion of the government to consolidate the two above numbered indictments for trial. The omnibus motion is a formidable one of 103 pages, presenting every challenge that can be raised in a federal criminal prosecution, and even including challenge of unconstitutionality to the statutes upon which both indictments are based. The omnibus motion was first filed against indictment 79–CR–135, which was returned by a Grand Jury in Syracuse on November 7, 1979, and is reasserted in full without change of a comma or period against the second indictment, 80–CR–24, returned by the same Grand Jury in the City of Syracuse on March 28, 1980. The scattering array of challenges in the omnibus motion is met by an affidavit of Assistant United States Attorney William J. Dreyer in response that from review in my judgment provides sufficient factual basis, persuasive legal reasoning and case law analysis for the rulings previously made by my decision of May 27, 1980, denying the defense omnibus motion and granting the government's motion for consolidation of the indictments for trial. The response to the omnibus motion discusses and answers seriatim the numerous defense challenges.

There are many issues raised in the defense motion that upon first reading I consider frivolous and unsupported factually, or based upon sheer speculation and surmise, and these will not receive any extensive discussion. Several of the points raised have substance in the law and shall be accorded more review and comment. In regard to the bill of particulars and discovery aspects of the motion, I believe the defense is satisfied with the material furnished or to be furnished by the government. If it be otherwise, it is my judgment that the government has been fair—even to the point of being generous—and the requests in that regard are only granted to the extent the government has complied and agrees to comply in the future, otherwise denied. The government has advised there was no electronic surveillance, wiretapping or monitoring in the investigative functions.

Together with the charge of unconstitutional composition, the Grand Jury that returned the indictments is subjected to a general attack in every conceivable detail of its processes and procedures with insinuations of impropriety on the part of the government attorney in the presentation of the case to the Grand Jury. The complete lack of factual basis to support these charges is demonstrated by the request for

interrogatories to be submitted to the prosecution concerning their alleged improprieties with the unique statement that at this stage "it is reasonably believed" such improprieties took place. Settled and reasoned case law rejects this type of unfounded and unsupported charges in relation to a Grand Jury process.

■ The scrutiny of a court is not triggered by unsubstantiated and speculative assertions of impropriety. *United States v. Rubin*, 559 F.2d 975 (5th Cir. 1977). There is no requirement on the part of the government to affirm and deny this type of unsupported assertion or to answer interrogatories regarding Grand Jury conduct and procedures. *In re Millow*, 529 F.2d 770 (2d Cir. 1976). There is no legal obligation to present exculpatory evidence to a Grand Jury. *United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977). The leading case on the sufficiency of evidence to justify indictment and procedures for its presentation is *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *see also United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *United States v. Ciambrone*, 601 F.2d 616 (2d Cir. 1979); *United States v. Tane*, 329 F.2d 848 (2d Cir. 1964). The United States Attorney is the investigative and legal advisor for the Grand Jury. *United States v. Ciambrone, supra.* The critical step is the adoption by a Grand Jury of the indictment regardless of its preparation. *Gaither v. United States*, 413 F.2d 1061 (CADC 1969). Summaries of agents testifying before a Grand Jury as to knowledge and information obtained from other sources are not unlawful and there is no indication here the Grand Jurors were misled in that respect. *See United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972). The lack of continuity in presence of jurors voting on the indictment is not a viable claim. *United States ex rel. McCann v. Thompson*, 144 F.2d 604 (2d Cir. 1944) (L. Hand, C. J.); *Lustiger v. United States*, 386 F.2d 132 (9th Cir. 1967). Defense access to Grand Jury minutes will be provided at the proper time pursuant to Title 18 U.S.C. § 3500(a) and (b). The prosecution is not required to disclose every detail of its proposed evidence and trial strategy. *United States v. Fioravanti*, 412 F.2d 407, 411 (3rd Cir. 1969). It is claimed that the charge to the Grand Jury may have been inadequate and not protective of the interests of the defendant. I have obtained a copy of the charge by the court at Syracuse and shall file it with this decision. It is as expected satisfactory and fair. I have also obtained and examined the voting record of the Grand Jurors for each indictment. There is a substantial majority in each instance above the twelve needed to return the indictment. The records have been sealed and filed with the Clerk of the Court.

■ There is some substance to the contention there is multiplicity in counts of the first indictment. The motion requests an order of dismissal of this first indictment as multiplicitous in that it charges separate mailings to several of the alleged same victims, or else an order for the direction of an election of counts that would reduce the eight mailings at least to four. In my opinion, the indictment is clearly worded and straightforward in the terminology and details of the basic charge alleged against the defendant of devising intentionally a scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representation and promises. The alleged scheme is spelled out in detail and the use of eight mailings in furtherance of it constitutes a separate count for the first eight counts. Each mailing, or its use in the execution of the alleged scheme to defraud, may be so charged. *Badders v. United States*, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916); *United States v. Eskow*, 422 F.2d 1060, 1064 (2d Cir. 1970), *cert. denied*, 398 U.S. 959, 90 S.Ct. 2174, 26 L.Ed.2d 544 (1970); *see also United States v. Feinberg*, 535 F.2d 1004, 1010 (7th Cir. 1976); *United States v. Hannigan*, 303 F.Supp. 750 (D.Conn.1969).

■ The defense argues vigorously there is misjoinder of the counts in the first indictment because the relationship as stated between the defendant and alleged victims

involve different times, different people, different circumstances and different transactions. However, to my mind, the joinder falls clearly within the permissible provisions for joinder set forth in Rule 8(a) of the Federal Rules of Criminal Procedure. The fundamental basis supporting the separate counts alleges the acts of mailing as part of a common and continuous scheme and plan emanating from one source, the defendant as President of an investment and management consulting firm. Count 9, alleging interstate transportation of a stolen security in March 1979, is shown by the government to be intertwined with evidence and circumstances relating to Count 3, and the joinder of the counts in one indictment is logical and legal in fairness to the interests of the defendant and orderly law enforcement. *United States v. Park,* 531 F.2d 754 (5th Cir. 1976); *Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). The defense attorney orally expressed the fear at the motion hearing that joinder would deprive the defendant of testifying as to innocence on certain counts, but Circuit Judge Friendly explored this subject and ruled "mere unexplicated assertion" in that regard is not enough. *United States v. Werner,* 620 F.2d 922, at 930 (2d Cir. 1980).

■ The charges of unconstitutionality against the statutes upon which the charges in both indictments are based as being vague and ambiguous are untenable. The statutes are old in the law and meet the test by their wording of being capable of being understood by a person of average intelligence covering the acts that would constitute unlawful conduct. Each of the statutes relate to conduct that is proscribed, such as, a scheme to defraud, mailings, in furtherance of it, transportation of stolen money in interstate commerce, and false statement in bank loan application. The language in the statutes and the indictments is uncomplicated and not difficult to comprehend. The counts in both indictments sufficiently aver the elements in support of the offenses charged, inform the defendant fairly of the charges and follow the language of the particular statutes.

*Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Trotta,* 525 F.2d 1096 (2d Cir. 1975). The use of the mails in the execution of the scheme, and the term "stolen" in the interstate transportation counts have received careful consideration and interpretation in the courts, favorable to the government's position in this instance. *United States v. Chason,* 451 F.2d 301, 303 (2d Cir. 1971); *cert. denied,* 405 U.S. 1016, 92 S.Ct. 1291, 31 L.Ed.2d 479 (1972); *United States v. Calvert,* 523 F.2d 895, 912 (8th Cir. 1974); *Gay v. United States,* 408 F.2d 923 (8th Cir. 1969).

■ There is a motion to dismiss claiming media publicity existed that may have prejudiced the Grand Jurors sitting in Syracuse where the indictment was returned. There are no newspaper articles or any other materials furnished to support the contention in any respect. The defendant is from the Albany area which did have substantial media coverage about the matter but the coverage has lessened greatly in this area in recent months. The venue is unquestionably proper in this district for the mail fraud and stolen property counts according to the details of the charges as made. *Hagner v. United States,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *United States v. Cashin,* 281 F.2d 669 (2d Cir. 1960); *United States v. Infanti,* 474 F.2d 522 (2d Cir. 1973).

### A.

The defendant as part of this omnibus motion moved pursuant to F.R.Crim.Proc. 6(b) and Title 28 U.S.C. § 1867(a) and (d), for an order dismissing the first indictment, now also asserted against the second indictment, and for an order staying proceedings pending discovery, inspection and hearing regarding the jury selection process in this Northern District of New York. The challenge is that the selection process for both Grand and Petit jurors in this district resulted in an unconstitutional composition of the Grand Jurors in Syracuse that returned the two indictments in this case, and also

caused unconstitutional composition of the petit jury panel in Albany that will be available for the trial of the case. The request for discovery and inspection gave the firm impression that defense counsel at the time the charges were made in the original motion had little, if any, factual information or statistics upon which to base such serious charges. In retrospect, it does seem the charges, made for the first time in this district since the Jury Selection and Service Act of 1968, Title 28 U.S.C. § 1861 et seq., was enacted into law, may be charitably accepted as probably "pure boilerplate" ones existent in the new federal criminal form books, and elaborated upon in seminar discussions.

The substantial response affidavit of the government to the omnibus motion contains a detailed section (pp. 34–40) setting forth actual facts and important federal case law pertinent to this charge. A supplemental affidavit was filed by the government after the defense was granted, pursuant to 28 U.S.C. § 1867(d), full inspection of the jury lists and Clerk's records, and permission to discuss personally the selection procedures with the Clerk who is in charge of the random selection of jurors in this District. Thereafter, the affidavit of Neal Bush, Esq., an attorney and consultant, was filed by the defense. He conducted the examination and inspection in support of the several charges previously made that the Grand Jury in Syracuse and the Petit Jury panel in Albany were unconstitutionally drawn and unconstitutionally composed.

The purpose of the Jury Selection and Service Act of 1968 was to guarantee as much as possible that there be broad selection of federal jurors from a fair, cross-section of the community, and that none of our citizens be discriminated against or excluded from jury service on account of race, color, religion, sex, national origin, or economic status. To attain this broad and nondiscriminatory selection, the Act provided for the selection of jurors from either voter registration lists or lists of actual voters in the federal districts. At that time, the Court, due to the large geographical spread in the district of twenty-nine separate upstate New York Counties, for reasons of efficiency in management and compilation, created divisions of different groups of counties nearest the places where court sessions were held, and decided for the same reasons to use exclusively voter registration lists for this Northern District of New York. A detailed Plan of the United States District Court for the Northern District of New York for the Random Selection of Grand and Petit Jurors was drafted pursuant to the congressional Act, approved by me as Chief Judge, and approved as to form and content by the Judicial Council of the Second Circuit, consisting of the nine circuit judges. The emptying, filling and refilling of the master and qualified jury wheels at certain time periods is done under the supervision of the Clerk of the Court, and the names for the master wheels are those randomly taken from the voter registration lists of the most recent federal election that is applicable. The instructions in the local plan in this respect are elaborate and particularized for the functions of drawing and listing, and enforcing the methods for random selection.

The charges here settled down by the affidavit of Neal Bush, the defense consultant, to the contention from his examination of records that there was underrepresentation of females in the Albany-Malone division of the district, and as Bush states it, also a disproportionate representation of whites and non-whites in the Albany-Malone division. It is also contended that inasmuch as the practice is followed of filling the master wheel every four years, from the recent federal election, the last filling for the Syracuse-Binghamton division being in 1977 and the Albany-Malone division in 1978, the result is that persons under 18 years, who could not register to vote for the November 1976 federal election, are totally excluded from the random selection process for several years. The affidavit of Bush states that he talked to the Clerk in Albany, where the petit juror lists for the Syracuse-Binghamton division were not available. There seems to have been no further effort by him to obtain and inspect such records.

Attached to the three and one-half page affidavit of Bush is a statistical analysis of the two divisions (Albany-Malone, Syracuse-Binghamton) prepared and submitted to the Court by the Research Division of the Federal Judicial Center. The analysis of the Albany-Malone division is dated November 6, 1979, and the analysis of the Syracuse-Binghamton division is dated December 5, 1979. These analyses, in sophisticated statistical form, are based upon the comparison of 1970 census information and jury wheel data. It is cautioned that only statistical concepts and percentages with error prone possibilities are obtained for the analysis that are not necessarily equivalent to the legal concept of a fair cross-section of the community required by statutory policy and constitutional mandate.

However, the analysis of each division is not unfavorable at all to the selection procedures in either of the divisions in which the process is challenged. The affidavit of Neal Bush, from my review, discloses superficial examination, and there is no support for its conclusions gained from the attached statistical analyses of the Federal Judicial Center. The tables in the analysis of the Albany-Malone division, as the supplemental affidavit of the government points out, varies only by .6 in the case of non-whites, 1.7 to 7.9 in the case of males and 7.9 to 1.7 in the case of all females. The percentage ranges fixed for the jury wheel for the Syracuse-Binghamton division are within the percentage ranges fixed by the statistician preparing the report. These percentages with miniscule variances in the Albany-Malone division furnish under settled law no prima facie support for the claim of irregular or unconstitutional selection and composition of the jury panels.

■ I will now discuss actualities of the situation which refute the claim. Upon receipt of the statistical report. I directed the Clerk of the Court to speak to the Research Division of the Federal Judicial Center to find out if the particular selection procedures in the divisions were meeting the standards of the Act and the Constitution. Upon the memorandum, forwarding the analyses to Chief Judges that I turned over to him, the Clerk noted that he spoke to a John Shepard of the Center and in his handwriting, it is written "12/3(79) spoke to John Shepard of AO—said we are within normal limits". Court Exhibit 1. The figures speak for themselves anyway, and afford the same clear answer. As a matter of current interest, I also had the Clerk check the records of the makeup of the Grand Jury in Syracuse that returned the two indictments in this case and of the Petit and Grand Jurors sworn for the March-Albany trial session. The Syracuse Grand Jury of 23 persons sworn consisted of 13 females and 10 males. The Petit Jury Panel sworn in Albany on March 6, 1980 consisted of 18 females and 17 males. The Grand Jury Panel of 19 persons sworn in Albany on March 5, 1980, consisted of 12 females and 7 males. The Foreperson of that Grand Jury in Albany, selected by the Court, is a black female, and another panel member of the same Grand Jury of 19 persons is a black female.

■ Together with the lack of factual support for the challenge, there is no legal support for the claim that there was unconstitutional composition of the Syracuse Grand Jury and the available Albany Petit Jury Panel. A defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race to be drawn for jury purposes, and the jury list and panels do not need to be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. *Swain v. Alabama,* 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1965). Only gross or marked disparities or substantial departure from a fair cross-section of the community require judicial intervention, and the group alleged to be misrepresented must be a "distinctive" or "cognizable" one. *United States v. Test,* 550 F.2d 577 (10th Cir. 1976); *see also Jones v. Georgia,* 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25 (1967); *Thompson v. Sheppard,* 490 F.2d 830 (5th Cir. 1974).

■ It has been held in the Second Circuit, it is reasonable for Congress to desig-

nate voter registration lists for random selection of jurors. *United States v. Guzman*, 337 F.Supp. 140 (SDNY 1972), *aff'd* 468 F.2d 1245 (2d Cir.), *cert. denied*, 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973). The use of voters registration lists as the sole source of the names of potential jurors is not constitutionally invalid, absent a showing of discrimination in the compiling of such voters registration lists. *United States v. Parker*, 428 F.2d 488, 489 (9th Cir.), *cert. denied*, 400 U.S. 910, 91 S.Ct. 155, 27 L.Ed.2d 150 (1970); *United States v. Freeman*, 514 F.2d 171, 173 (8th Cir. 1975); *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1976).

It is evident that there is no substance in or support for the constitutional challenge made in the omnibus motion to the selection and composition of the Syracuse Grand Jury and the Albany Petit Jury Panels.

### B.

The question of the consolidation of the two indictments for trial presents a substantial issue. The defense urges earnestly that the consolidation of the separate indictments is unwarranted under the applicable Rules of Criminal Procedure, and that consolidation would be grossly prejudicial to the defendant. The argument is pressed strongly that the two offenses charged in the second indictment are not of a similar character or based on the same acts or transactions set forth in the first indictment, and are not connected in any way by a common scheme or plan. That the mail fraud counts in the first indictment involved receipt of money into certain companies of the defendant on different dates and times than those involved in the two counts of the second indictment. That the transactions are as alleged of entirely different episodes. That count one of the second indictment charging a false statement on a bank loan application, and based on the statute not even mentioned in the first indictment, and the charge in Count 2 of interstate transportation of stolen property, do not resemble and are totally unrelated to the mail fraud counts and the single interstate transportation count in the first indictment.

After careful consideration, it is my judgment that the government's position for consolidation should prevail as was indicated by my grant of the motion in my previous decision. The supporting affidavit of the government for the motion to consolidate outlines in detail the factual background situations to show convincingly that the alleged transactions upon which the charges in the second indictment are based do intertwine and connect together with transactions in several counts of the first so as to constitute part of a common scheme to obtain moneys by fraud. Such relationship of the counts of the second indictment with the counts of the first indictment would have been sufficient to supply the necessary elements to originally permit these counts to have been charged in a single indictment under the provisions of F.R.Cr.Proc. 8(a). The important factor to link and connect the acts and transactions together with a common scheme to obtain money by fraud, as the government emphasizes, is the alleged position of trust maintained by the defendant in investment and consultant companies he owned and dominated. *See United States v. Barrett*, 505 F.2d 1091, 1105 (7th Cir.), *cert. denied*, 421 U.S. 964, 96 S.Ct. 498, 46 L.Ed.2d 450 (1975); *United States v. Weber*, 437 F.2d 327, 331 (3rd Cir. 1970), *cert. denied*, 402 U.S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971). I find that the addition of these counts in the two indictments, totaling eleven (11), not an unusually high number in the federal system, will not be an unwieldly number to handle at a trial nor have a tendency to complicate the presentation of evidence and to confuse the jury. The considerations and cautions outlined in *United States v. Halper*, 590 F.2d 422, 428–9 (2d Cir. 1978), have been duly weighed for the exercise of the discretion in F.R.Cr.Proc. 13. It seems quite certain that the same evidence to be offered in the support of the two counts in the second indictment would be admissible in the trial on the first indictment if severance were granted. *United States v. Weber, supra,*

437 F.2d at 332. The possible violations of a Fifth Amendment privilege in that the defendant may be placed in a position where he could not testify as to innocence of the charges in the two counts in the second indictment is answered again by the writing of Judge Friendly in *United States v. Weber, supra.*

In conclusion, it should be noted that the commencement of the trial on the two indictments, which was scheduled to begin on Thursday, May 29, 1980, was at the request of defense counsel Herald Price Fahringer, who was engaged in court proceedings in New York City, adjourned to Tuesday, June 3, 1980.