**UNITED STATES of America**

v.

**Christine BALL, f/k/a Christine Shanteau.**

**Cr. A. No. 89–CR–20023–01–BC.**

United States District Court,
E.D. Michigan, N.D.

May 31, 1990.

Janet Parker, U.S. Atty., Bay City, Mich., for plaintiff.

Joseph L. Scorsone, Saginaw, Mich., for defendant.

## OPINION AND ORDER

ROSEN, District Judge.

This matter is before the Court on the Defendant's motion for a judgment of acquittal pursuant to FED.R.CRIM.P. 29 following the presentation and close of the Government's proofs. For the reasons set forth below, the Court is of the opinion that the Defendant's Motion must be GRANTED.

## I. FACTS

The Defendant was indicted on two counts of perjury under 18 U.S.C. Section 1623(a). The allegedly false statements which form the basis for the indictment were given during the Defendant's testimony before a grand jury impanelled in this

district, during two sessions on May 10, 1988 and July 22, 1988.

The Defendant's testimony was given during the course of the grand jury's investigation of an alleged cocaine trafficking conspiracy in Saginaw County, Michigan involving several individual acquaintances of the Defendant, including her then fiance, now husband, Donald Ball. The Defendant may have been a target of the grand jury's investigation, but the Defendant has not been indicted on any conspiracy or drug-related charges.[1]

The allegedly false statements which form the basis for Count I of the indictment were made by the Defendant before the grand jury on May 10, 1988, and are as follows:

Q: [By Assistant United States Attorney] Are you aware that Don distributed cocaine, sold it to other people?

A: [By the Defendant] Excuses me?

Q: Were you aware that Don sold cocaine to other people?

A: I've heard rumors. I've never seen him.

Q: All right. Were you aware that he gave it to other people for other things?

A: I've never seen him, but I've heard rumors.

The allegedly false statements which form the basis for Count II of the indictment were made by the Defendant before the grand jury on May 10, 1988, and are as follows:

Q: And you never heard Don discussing buying or selling dope with anyone?

A: No.

Q: You never heard anyone else talking about that?

A: No, I didn't.

Q: You want to stick with that answer?

A: Yes.

1. However, numerous other individuals, including defendant's husband, were eventually tried and convicted of conspiracy charges.

2. The government has not claimed that the Defendant's exclamation, "Excuse me?" and the

In all, the Defendant made six statements, but only four of the statements provide the basis for the alleged offenses.[2]

During its proofs, the government presented the testimony of a federal law enforcement official familiar with the government's procedure for wiretapping, agent David Welker, and the testimony of Steve Ferguson, an individual acquainted with the Defendant herself. In addition, the government properly read into evidence the transcript of the Defendant's allegedly perjurious grand jury testimony, as well as the audio tape of a private telephone conversation conducted on March 23, 1988 between the Defendant and Don Ball on one line, and witness Ferguson on the other. The tape was obtained by the government as a result of secret wire-tapping conducted by the government under the authority of an order of the Court. After presenting this evidence, the government rested.

## II. DECISION

The Defendant now moves for an acquittal pursuant to FED.R.CRIM.P. 29, which provides, in pertinent part:

**Rule 29. Motion for Judgment of Acquittal**

(a) **Motion Before Submission to Jury.** Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

Defendant's affirmative response to the question, "You want to stick to that answer?" are perjurious either in themselves or in conjunction with other testimony.

This provision has been interpreted by the Sixth Circuit as follows:

> The District Court's standard in deciding the motions for judgment of acquittal was whether, considering the evidence in the light most favorable to the government, there was evidence from which a jury might reasonably find the defendant guilty beyond a reasonable doubt. This is the proper standard for evaluating a motion for judgment of acquittal.

*United States v. O'Boyle,* 680 F.2d 34, 36 (6th Cir.1982).

■ Thus, the Court must grant the Defendant's motion if the evidence as a whole, taken in the light most favorable to the government, together with all legitimate inferences to be drawn from such evidence, would not allow a rational trier of fact to find the Defendant guilty beyond a reasonable doubt.

The statute under which the Defendant was indicted provides, in pertinent part, as follows:

> **Section 1623. False declarations before grand jury or court**
>
> (a) Whoever under oath ... in any proceeding before or ancillary to any court or grand jury of the United States *knowingly makes any false material declaration* ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.
>
> \*       \*       \*       \*       \*       \*

18 U.S.C. Section 1623(a) (Emphasis added).

■ Thus, in order to convict the Defendant of perjury under this statute, the government must establish the following elements:

> 1. The Defendant made a declaration under oath;
>
> 2. The declaration was false;
>
> 3. The Defendant knowingly made the false declaration; and
>
> 4. The false declaration was material to the grand jury proceeding.

■ Here, the government's evidence as to three of the four allegedly false statements does not meet even the threshold of these standards for the simple reason that it is not sufficient to allow the jury to find, beyond a reasonable doubt, that the statements were false. Taking the statements in order, the first allegedly false statement made by the Defendant is as follows:

> Q: Were you aware that Don *sold* cocaine to other people?
>
> A: I've heard rumors. I've never seen him.

The government asserts that the evidence presented would allow the jury to find that this statement is false. Of course, in order to succeed here, the government's evidence would have to show that:

> (1) The Defendant had not just heard rumors that Don sold cocaine to other people, but knew something far greater; or
>
> (2) The Defendant *had seen* Don sell cocaine to other people.

The Court's review of the evidence presented leads the Court to conclude that no evidence presented by the government— direct or circumstantial—would allow a reasonable mind to conclude beyond a reasonable doubt that this two-part statement was false. First, no evidence in this record proves directly that the Defendant knew that Don Ball had sold cocaine. Taken in its most generous light, all that the evidence shows is that there was an exchange of a stereo for money and cocaine.[3] This was the only evidence the government presented which even remotely related to a "sale" of cocaine and Defendant's knowledge of such a transaction. It is not clear to the Court that a reasonable mind could conclude beyond a reasonable doubt that the Defendant's testimony in response to a question about a sale was knowingly false, particularly given the context of the particular transaction relied upon by the Government.

---

**3.** Indeed, the clear testimony of Government witness Ferguson was that even this transaction started out as a straight sale by Ferguson of his stereo system to Donald Ball. When Ball did not have the money to pay Ferguson the full purchase price, he paid him $200 in cash and gave him a quantity of cocaine in exchange for the balance due.

As to circumstantial evidence, the grand jury transcripts support only the inference that the Defendant had heard rumors, as she, in fact, testified. Indeed, the Defendant testified at the grand jury proceedings in this matter that Don Ball had been arrested in April, 1988 (preceding the Defendant's grand jury testimony) for cocaine trafficking, and this is the only evidence presented that indicates that Defendant knew that Don Ball had sold cocaine. Although this may not exactly be "rumors," it is only an allegation.

The alleged falsity of the second part of this statement—that the Defendant had never seen Don Ball sell cocaine—likewise was not supported by any direct evidence in the record. Although the Defendant stated during the March 23, 1988 tape-recorded telephone conversation, "I'm upset too, I don't like Don dealin' in that shit," this statement does not reveal whether or not the Defendant had actually *seen* Don Ball *sell* cocaine to other people.

The government would also like the Court to conclude that because the Defendant made a statement in the March 23, 1988 telephone conversation, to the effect that, she was standing right there when Steve Ferguson got two "eightballs," [4] this could reasonably be taken to prove beyond a reasonable doubt that the Defendant had seen Don Ball sell cocaine. This argument fails for two reasons. First, again, this is clearly an "exchange" and, even though it could be interpreted as a sale, it is at least equally plausible that the Defendant focused on the trade aspect when responding to the questions during the grand jury proceedings. Second, all of the testimony at trial, including the testimony of the government's eyewitness, Steve Ferguson, indicates that the Defendant did not *see* even this transaction.

■ The same analysis applies to the Defendant's allegedly false statements in Count II of the indictment that she had never heard Don Ball—or anyone else—discussing buying or selling dope with any-

one. There is no direct evidence on the record that the Defendant was present or on the telephone when buying or selling drugs was discussed. Witness Ferguson specifically denied that the Defendant was present when Don Ball delivered cocaine on two occasions to him. As to whether the Defendant *actually heard* Don or anyone else discuss buying or selling drugs, the Defendant's grand jury testimony, taken as a whole, actually leads to the opposite inference, that the Defendant deliberately avoided any such discussions.

With regard to the evidence of the Defendant's March 23, 1988 telephone conversation with Steve Ferguson, this too fails to support the inference that the Defendant had actually witnessed Don or others discussing or actually buying or selling cocaine or other drugs. Instead, the telephone conversation only refers to the apparent barter transaction whereby Don Ball gave drugs to Ferguson in exchange for a stereo after he was unable to come up with the purchase price. Arguably, this conversation had nothing to do with either "buying" or "selling." Furthermore, this conversation does not support any inference either way as to whether the Defendant had witnessed actual buying or selling transactions.

■ However, even if the wire-tapped telephone conversation were construed to involve "buying" or "selling" cocaine, the government cannot rely on this evidence alone to support a conviction for perjury because the Defendant gave a detailed account of this transaction, and, related her knowledge of it, during her grand jury testimony both on May 10, 1988 and on July 22, 1988. Therefore, as will be shown, any statement in the Defendant's grand jury testimony that might be interpreted as denying that this Ferguson transaction took place, or that Defendant knew of it, is not *material* to the grand jury proceeding.

The one statement which might arguably be sufficient to allow the jury to infer that

---

**4.** The testimony of agent David Welker is that the term "eightball" signifies one-eighth ounce of cocaine.

the Defendant made a knowingly false statement is:

Q: All right. Were you ever aware that he gave it to other people for other things?

A: I've never seen him, but I've heard rumors.

The wire-tapped telephone conversation of the Defendant that took place on March 23, 1988 reveals both that (1) the Defendant was aware of the cocaine-for-stereo barter transaction, and (2) the Defendant was, at least tangentially, involved in the transaction—although after the transaction took place, and only to the extent that she asked for a receipt.

But, although this grand jury statement, taken by itself, is false—perhaps even knowingly false—the Court finds as a matter of law that this testimony is not "material" to the grand jury proceedings in which it was given.

The Sixth Circuit has defined the standards governing whether a defendant's allegedly false statement is "material" to a grand jury proceeding for the purpose of perjury charges:

[F]alse testimony before the grand jury is material if it "has the natural *effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation.*" Merely potential interference with a line of inquiry is sufficient to establish materiality regardless of whether their perjured testimony actually serves to impede the investigation.

*United States v. Richardson,* 596 F.2d 157, 165 (6th Cir.1979) (Quoting *United States v. Howard,* 560 F.2d 281, 284 (7th Cir.1977) (Emphasis added).

[A] false statement satisfies the materiality requirement if a truthful statement might have assisted the grand jury in its investigation. That [the defendant's] false statements did not succeed in leading the grand jury astray is irrelevant.

*United States v. Swift,* 809 F.2d 320, 324 (6th Cir.1987).

Here, the Defendant gave the allegedly perjurious testimony at the May 10, 1988 grand jury proceeding. Assuming for the purposes of the present analysis that the statements were knowingly false, the government cannot meet its burden of proving, by a preponderance of the evidence, that the testimony had either the tendency or the effect of impeding the grand jury's investigation. On the very next page of the transcript, the Defendant, when reminded of the stereo transaction by the prosecutor, not only admitted to having detailed knowledge of the transaction, but, in fact, testified to the grand jury in great detail about the transaction and the circumstances surrounding it.

■ When a witness' own testimony provides the grand jury with the information that was sought by the grand jury, the witness' allegedly perjurious testimony that she lacked knowledge of the information sought cannot have the tendency or the effect of impeding the grand jury's investigation. *United States v. Lasater,* 535 F.2d 1041, 1049 (8th Cir.1976). In *Lasater,* the defendant bank president specifically denied, in his grand jury testimony, knowing the details of a bond transaction whereby his bank purchased bonds over market price to provide kickbacks to the then governor of Missouri in exchange for the state's making deposits of state funds in the bank. However, the defendant, in the same grand jury testimony, went on to describe the transaction in detail, thus directly providing the information sought. The grand jury then indicted the defendant for perjury, based in part on his denial of knowledge of the details of the transaction. In upholding the trial court's Rule 29 acquittal of the defendant, the Eighth Circuit Court of Appeals held that the allegedly false testimony did not have the effect or tendency to impede the grand jury's investigation, and therefore was not material. *Id.*

Similarly, in the instant case, the Defendant's alleged general denial of knowledge concerning transactions involving the delivery of cocaine in exchange for "other things" did not in any way impede the grand jury from obtaining, literally within moments, the very information it apparently sought regarding the Ferguson transac-

tion. In the absence of some evidence that the Defendant also hid some other transactions from the grand jury's investigation, the Court holds, under the rationale of the *Lasater* case, that the Defendant's testimony was not material to the grand jury's investigation.[5]

The government attempts to argue around materiality with a rather procrustean and speculative analysis. In essence, the government argues that it believes the Defendant's grand jury testimony was filled with other false or evasive testimony, and this other prevaricating testimony establishes her general intent to mislead the grand jury. The government then suggests that the jury could infer from this general intent that the Defendant intended to mislead the grand jury with this particular testimony for which she was indicted. Therefore, the government concludes, the Defendant's testimony, when taken as a whole, had the tendency to impede the grand jury. This analysis is flawed in several respects. First, the government has not cited the Court to any other specific grand jury testimony which was false or clearly evasive. The Government's argument requires, as a threshold matter, the Court to assume or speculate that there was other false or evasive testimony. The Court believes that if there was other false testimony, the grand jury would have indicted the Defendant with regard to that false testimony as well.

However, even if the government could show that the Defendant made numerous other false statements, and the jury could infer from this that the Defendant intended to mislead the grand jury with the testimony at issue here, this still does not mean that the jury in the instant case could infer that the specific testimony in the indictment had the tendency or effect to impede the grand jury. In fact, as indicated earlier, this specific testimony had no such effect. The government has not shown the Court one instance in which the Defendant saw or heard or even was aware that Don Ball sold or bought drugs or even gave drugs in exchange for other things, that was not also disclosed to the grand jury.

■ Finally, the government in oral argument suggested that the following statement made by the Defendant during the March 23, 1988 telephone conversation revealed that she knew more than she revealed to the grand jury:

I'm sure your wife don't like it either. I didn't like it 'cause I stood right here and told you, Steve, that you would smoke up that *shit* and you wouldn't sell it. Hey, I don't like all the *shit* and I don't like all the *shit* Don got into because of all them drugs. But you made the mistake just like Don made the mistake, and now he has to live with his consequences. So do you. *Don sold a lot of shit because he wanted to get high* and he fucked up a lot because he wanted to get high. He has to live with his consequences; you have to live with yours, know what I mean?

The government argues that this passage shows that the Defendant knew about many transactions in which Don Ball sold cocaine to get money to get high. In reaching this conclusion, the government implies that, because the Defendant meant "drugs" when she first said "shit" in this passage, she meant "drugs" all four times. However, taken in context, it is clear the word, "shit," in the emphasized sentence simply means possessions in general; i.e., that Don Ball, like Steve Ferguson, sold his possessions to get money to *buy* drugs, not that he sold drugs for money.

## CONCLUSION

For all of these reasons, the Court finds as a matter of law that the government has failed to present sufficient evidence to permit a rational trier of fact to find the Defendant guilty beyond a reasonable doubt of the indicted offenses. Accordingly, the Court GRANTS the Defendant's motion pursuant to FED.R.CRIM.P. 29 for

---

5. Although this fact is not determinative, the Court notes that the grand jury did indict—and the Government gained conviction of—many of the people who were the subject of Defendant's grand jury testimony, including Defendant's husband.

a judgment of acquittal, and will enter a separate judgment of acquittal.