943 F.2d 53
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carl GREEN, Defendant-Appellant.
 Nos. 90-3468, 90-3469.
 United States Court of Appeals, Sixth Circuit.
 Sept. 10, 1991.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and WEBER, District Judge.*
 PER CURIAM:
 
 
 1
 Carl Green ("Green") appeals from the district court's May 16, 1990, judgment of conviction entered pursuant to a jury verdict finding him guilty of possession with intent to distribute and conspiracy to distribute cocaine and possession of a firearm by a convicted felon. For the reasons set forth below, we AFFIRM.
 
 I.
 A.
 
 2
 The following facts are based on trial testimony. Raymond Ripley ("Ripley") distributed kilogram amounts of cocaine on a monthly basis from August 1987 until July 1989. Carl Green was his cocaine supplier.
 
 
 3
 Several controlled drug purchases were made directly from Ripley through the use of cooperating individuals such as David Brown ("Brown") and Daniel Hapsig ("Hapsig"). On February 2, 1989, at a bar near Green's apartment, Brown purchased one ounce of cocaine from Ripley. Green met Ripley and Brown at the bar to complete the transaction. Green provided Ripley with an envelope with the cocaine and Ripley gave an envelope containing currency provided by the FBI to Green.
 
 
 4
 On May 26, 1989, Brown purchased four ounces of cocaine for $4,400 from Ripley. Again, Brown and Ripley met Green. This time, however, they met in the vicinity of the garage assigned to Green's apartment. During this meeting, Green handed an envelope containing cocaine to Ripley in exchange for the currency.
 
 
 5
 On July 13, 1989, Ripley and Green met at Green's apartment to divide a kilogram of cocaine into various quantities. One pound was designated for Brown as a result of prior negotiations. Later that evening, Ripley was arrested while possessing $14,400 of government funds provided by the FBI to Brown to pay for the pound of cocaine he purchased. The arresting officers recovered seven ounces of cocaine from Ripley's vehicle.
 
 
 6
 Immediately after his arrest, Ripley gave a statement to the agents identifying Green as his cocaine supplier and indicating that he planned to meet Green at a nearby bar after completing the drug transaction. Shortly thereafter, Green was arrested at the bar.
 
 
 7
 The investigating agents obtained search warrants for various locations. A search of Green's apartment, D-12 in the Timber Ridge apartment complex, was conducted pursuant to one of these warrants. The agents seized from Green's apartment and a locker assigned to his apartment numerous items including one half kilogram of cocaine, more than $15,000 in currency, and drug paraphernalia such as sifters and small plastic bags. In the garage assigned to Green's apartment, the officers found a locked storage bin. Inside the storage bin, the agents recovered a .45 caliber semiautomatic pistol and ammunition clips. Brown identified the firearm as the weapon he had given Ripley to trade with Green for seven ounces of cocaine.
 
 
 8
 Green testified at his trial and denied any involvement in the distribution of drugs. He claimed that he derived his income from illegal gambling. He claimed that he leased the Timber Ridge apartment as a favor to Elvira Rincon.
 
 
 9
 James Watson testified that he was the owner of the .45 semiautomatic pistol that had been recovered. He explained that in May 1989, he was in Cleveland with his wife and he did not want to keep the firearm in his car. He decided to go to Green's apartment complex and leave the gun in the locked storage bin. His testimony, however, was undermined by his admission that the storage bin was locked but he did not have a key to it.
 
 B.
 
 10
 A federal grand jury indicted Green on August 10, 1989, in a multiple-count indictment charging drug-related offenses. A superseding indictment was filed on October 4, 1989, charging Green with the following: conspiracy to possess with the intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count 1); distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts 3, 4, 5 and 6); maintaining premises for distribution of cocaine, in violation of 21 U.S.C. § 856 (Count 8); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a) (Count 10).
 
 
 11
 On November 13, 1989, Green filed a motion to suppress which the district court denied on December 13, 1989. The case proceeded to a jury trial which began on January 23, 1990.
 
 
 12
 On January 30, 1990, the jury found Green guilty on all counts. On May 15, 1990, at the conclusion of a sentencing hearing, the district judge sentenced Green to a term of incarceration of 420 months on Counts 1, 3, 4, 5, 6 and 9. On Count 8, the district court sentenced Green to a concurrent term of incarceration of 200 months; and, on Count 10, Green received a term of incarceration of 120 months to be served consecutively with the other counts. The district court also sentenced Green to eight years of supervised release and imposed a special assessment of $400.
 
 
 13
 On May 21, 1990, Green filed a timely notice of appeal.
 
 II.
 
 14
 Green's first assignment of error involves the district court's denial of his motion to suppress the firearm seized from his storage bin. He claims that the firearm was not specified in the search warrant, therefore, it should have been suppressed. We find Green's argument unpersuasive and conclude that the firearm was lawfully seized.
 
 
 15
 The seizure of the firearm was proper because the search was conducted in conformity with the search warrant. The agents were authorized to search Green's garage. In the course of their search for narcotics, they discovered a locked bin. The agents broke the bin open and observed the firearm. The plain view doctrine is applicable to this set of circumstances.
 
 
 16
 In United States v. Ross, 456 U.S. 798 (1982), the Supreme Court stated:
 
 
 17
 A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.
 
 
 18
 Id. at 820-21. The agents were acting within legal bounds when they unlocked the storage bin during the course of their search for narcotics, drugs, documents and currency as specified by the search warrant. That the agents conducted an additional act of entry before discovering the firearm is of no consequence where they were engaging in a lawful search pursuant to a valid search warrant.
 
 
 19
 The plain view doctrine will support a warrantless seizure if the following conditions are met: (1) the agents are lawfully on the premises; (2) they discover the item inadvertently; and (3) the incriminating nature of the item is immediately apparent. Texas v. Brown, 460 U.S. 730, 736-37 (1983) (citing Coolidge v. New Hampshire, 403 U.S. 443 (1971)). In the instant case, each prong of the plain view test is satisfied. Under the terms of the search warrant, the search of the garage was authorized. The storage bin in the garage was properly searched. The locked bin was part of the area in which an item included in the warrant might have been found. Thus, under Ross, the agents were properly looking inside the bin. The firearm was discovered inadvertently. The agents happened to come across it while searching the bin for the items listed in the warrant. Finally, the searching agents, who were aware of Green's criminal record, immediately recognized the incriminating nature of the firearm. We, therefore, conclude that the district court's denial of the motion to suppress was proper.
 
 B.
 
 20
 Green next claims that the district court erred in denying his motion for a severance of the count charging him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). We are not persuaded by Green's argument.
 
 
 21
 We will not disturb the denial of a motion for severance in the absence of an abuse of discretion. See United States v. Gallo, 763 F.2d 1504, 1524-25 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986). To support a claim of abuse of discretion in denying severance, the defendant must make a strong showing of prejudice. Id. at 1525. Where the severance motion is not renewed at the end of the evidence, the severance motion is waived. United States v. Swift, 809 F.2d 320, 322 (6th Cir.1987). In the instant case, Green failed to renew the severance motion, therefore, it was waived.[1]
 
 
 22
 We also note that the district court did not err in allowing the government to present proof of Green's prior conviction. Proof of the prior conviction is an element of the firearm offense. Green did not stipulate to the prior conviction until the close of the government's case. Prior to this stipulation, it was necessary for the government to present proof regarding this charge. The trial court gave limiting instructions to the jury, indicating that the evidence of Green's prior criminal conviction was not to be considered as evidence of his guilt.
 
 
 23
 Green testified on his own behalf, placing his credibility at issue. The government cross-examined him regarding his prior convictions, including aggravated assault, burglary and drug offenses. Prior to Green's testimony, the government did not present evidence regarding any conviction other than the conviction relating to the firearm charge and the commencement of Green's association with Ripley. Thus the district court did not commit reversible error in admitting evidence of Green's prior convictions.
 
 C.
 
 24
 Green also argues that the district court erred in denying his motion for acquittal on the charge of possession of a firearm by a convicted felon. Green argues that the government failed to prove that he possessed the firearm which was recovered from a storage bin in his garage on or about the dates charged in the indictment. After reviewing the record, we find that this argument also must fail.
 
 
 25
 When considering a motion for judgment of acquittal, the evidence and all inferences must be viewed in the light most favorable to the government to determine whether "there was evidence from which a jury might reasonably find the defendant guilty beyond a reasonable doubt." United States v. O'Boyle, 680 F.2d 34, 36 (6th Cir.1982) (per curiam).
 
 
 26
 The agents recovered the firearm which is the subject of the § 922(g) charge during the early morning hours of July 14, 1989. The agents found the firearm in a locked storage bin in Green's garage. The evidence established that Brown had given the firearm to Ripley to exchange it with cocaine prior to November 1988 which was prior to his cooperation with the government. Ripley gave the firearm to Green in exchange for seven grams of cocaine. Green had exclusive dominion and control over the locked storage bin which was searched on July 13, 1989.
 
 
 27
 For the purposes of § 922(g), possession may be actual or constructive. Unites States v. Moreno, 933 F.2d 362, 373 (6th Cir.1991). "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." Id. (citing United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973)). The evidence established that Green had constructive possession on the dates charged in the indictment.
 
 D.
 
 28
 Green next argues that the district court erred in permitting the testimony of Green's codefendant, Ripley, who was incarcerated in the same jail facility as Green pending the trial. The record indicates that the government did not elicit testimony regarding any information obtained by Ripley while incarcerated with Green or any activities that took place after the conspiracy ended. We conclude that the district court did not abuse its discretion on this evidentiary matter.
 
 
 29
 Green expressed concern about Ripley's testimony after the government's opening statement. He failed, however, to make an objection before or after Ripley's testimony. In the absence of a timely and proper objection, our review is guided by the "plain error" standard set forth in Fed.R.Crim.P. 52(b). "Plain errors are limited to those harmful ones that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial." United States v. Causey, 834 F.2d 1277, 1281 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988). Upon reviewing the district court's admission of evidence we must "look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." United States v. Zipkin, 729 F.2d 384, 389 (6th Cir.1984).
 
 
 30
 Green has not shown that any testimony elicited from Ripley was based on information obtained while he was incarcerated with Green. In addition, he has failed to show any prejudice resulting from the use of information Ripley obtained while incarcerated with Green. Thus, we conclude that Green's assignment of error is without merit.
 
 III.
 
 31
 For the foregoing reasons, we AFFIRM the judgment of conviction and sentence imposed by the Honorable Sam H. Bell, United States District Judge for the Northern District of Ohio.
 
 
 
 *
 The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Were we to find the severance motion preserved, we nevertheless would find that the district court's denial of the motion constituted an exercise of sound discretion. Joinder of offenses that are the same or of similar character or are based on the same transaction or a common scheme is permitted. See Fed.R.Crim.P. 8(a); United States v. Moeckly, 769 F.2d 453, 464-65 (8th Cir.1985), cert. denied, 476 U.S. 1104 (1986). The evidence in this case established that Ripley traded the firearm to Green for Brown. The firearm was exchanged for cocaine. Thus the firearm was interrelated to the drug trafficking activities